Argued and submitted April 2, affirmed June 27, reconsideration denied September 28, petition for review denied October 23, 1984

INTERNATIONAL ASSOCIATION OF
FIREFIGHTERS, LOCAL 314,
*Respondent,*

*v.*

CITY OF SALEM,
*Petitioner.*

(C-61-83; CA A29314)

684 P2d 605

Jeannette M. Launer, Assistant City Attorney, Salem, argued the cause and filed the brief for petitioner.

Michael J. Tedesco, Portland, argued the cause for respondent. With him on the brief was Doblie & Francesconi, Portland.

Darrell Smith, Salem, filed a brief amicus curiae for Smith-Larson-Heuser & Co.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

This is a petition for judicial review of an order of the Employment Relations Board (ERB) finding that the City of Salem (City), a public employer, engaged in an unfair labor practice under ORS 243.672(1)(e)[1] by refusing to bargain collectively about the firefighters' safety proposal and ordering the City to cease and desist from its refusal. We affirm.

The City and the firefighters entered into collective bargaining negotiations for a successor agreement to their 1981-83 contract. The firefighters proposed several items during the negotiations over which the City refused to bargain, claiming that they were only permissive subjects of bargaining. The firefighters filed an unfair labor practice complaint with ERB to compel the City to bargain over the items, claiming that they were mandatory subjects of bargaining and that the City's refusal violated its duty to bargain in good faith under ORS 243.672(1)(e). ERB entered an order stating that the firefighters' proposals concerning layoff and safety were mandatory subjects and directed the City to bargain over those proposals. The City appeals that portion of the order compelling bargaining over the firefighters' proposal entitled "Article-21-Safety." The City challenges ERB's reasoning process and claims that there is not substantial evidence to support the conclusion that the proposal is mandatory.

The firefighters' proposed Article 21 provides:

"21.1 - The City shall continue to make reasonable provision for the safety and health of its employes.

"* * * * *

"21.3 - The parties recognize the extreme hazards of the firefighting profession. The parties agree that the number of firefighters on the fire scene and the manner in which they are expected to perform and react have a profound effect upon

---

[1] ORS 243.672(1)(e) provides:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(e) Refuse to bargain collectively in good faith with the exclusive representative."

their physical well-being. Thus, inasmuch as it is the City's responsibility to provide reasonable standards for safety of its personnel, the following are goals for manning levels:

"(1) All in service engine and truck companies shall have a minimum of three (3) personnel.

"(2) In case of an incapacitating injury or illness or other extreme circumstances that result in any company dropping below the minimum manning requirements as set forth in this Article, immediate steps must be taken to bring the company back to minimum levels.

"(3) When such action fails or proves infeasible, the Chief or other commanding officer retains the right to remove the company from service until manning requirements can be attained. In no event will a company remain in service below manning requirements for longer than one hour.

"(4) This Article does not restrict the right of the Chief or other commanding officer to place companies in or out of service at any time, subject only to the condition that when placed in service, manning requirements will be met.

"In the event it is Management's opinion that in a particular circumstance an engine company of less than three (3) persons is consistent with reasonable employee safety, such engine company will be operated under safety rules governing employee conduct, which are mutually agreed between the parties. No safety rule can be implemented without mutual consent."

The firefighters contend, and ERB's order concludes, that their proposal is a condition of employment, mandatory for bargaining, because safety is of "like character" to the statutory examples of "employment relations" provided in ORS 243.650(7)[2] and that the firefighters had proved that the preponderant purpose of the specific language of the proposal is to protect employes rather than to affect staffing decisions, which is a management prerogative. Because "employment relations" as defined in ORS 243.650(7) are subject to mandatory bargaining, ERB ordered the City to negotiate over the proposal. *Eugene Ed. Assoc. v. Eugene Sch. Dist. 4J,* 58 Or App 32, 35, 648 P2d 56 (1982).

---

[2] ORS 243.650(7) provides:

" 'Employment relations' includes, but is not limited to, matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment."

In *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980), the Supreme Court explained that review of an ERB decision of what is a mandatory subject for collective bargaining is limited to whether ERB correctly interpreted the law and whether the decision is supported by substantial evidence. The court said:

> "* * * Ordinarily, it is the initial responsibility of the agency, whether by rule or order, to explain the application of the statute to specific facts. Because the function of the court is to review an interpretation if review is sought, rather than to formulate it in the first instance, under ORS 183.482(8)(a) the court must uphold the order unless the agency has 'erroneously interpreted a provision of law.' Although the court might have expressed the interpretation differently if it had initial responsibility, the question on review is whether the agency interpretation is erroneous, not whether the court would have expressed the interpretation differently.

> "* * * * *

> "* * * When the application of statutory policy to fact is entrusted to an agency, and the agency has correctly interpreted the law, then the function of the court on review is not to substitute its judgment, but to uphold any reasoned application of that interpretation to the facts. * * *" 290 Or at 234-35.

Accordingly, the issue in this appeal is whether ERB's interpretation of "other conditions of employment," ORS 243.650(7), to include this proposal is within the range of acceptable interpretation of law ERB is empowered to make and is supported by substantial evidence.

The City claims that ERB's reasoning process placed an inappropriate burden on the employer, ignored the *specific* union proposal and abandoned the "balancing test" normally applied to determine whether a particular proposal is a mandatory or permissive subject for bargaining. It argues that ERB failed to recognize that the minimum personnel requirement stated in § 21.3(3) for service engines and truck companies is no more than a back door attempt to infringe on management prerogatives to control staffing and is inappropriately labeled "safety."

ERB analyzed the safety proposal in two stages. It concluded, first, that the general subject of "safety" is a

condition of employment of like character to those employment relations enumerated in ORS 243.650(7). Having so decided, it then examined the specific proposal and the evidence presented to determine whether the proposal was in reality a "staffing" proposal rather than a safety proposal.

The evidence presented by the firefighters focused on the interdependent nature of firefighters' tasks. A private consultant in the field of fire protection reviewed the City's firefighting system and testified that, in his opinion, a drop from a three-person engine company to a two-person company would cause an immediate increase in the frequency and severity of injuries to the remaining firefighters, based on the tasks that must be accomplished, at least until employes had been retrained and new safety rules had been developed. A current Salem firefighter described the teamwork under the current three-person engine company. He concluded that a reduction from a three-person to a two-person crew would increase his risk of personal injury. The City's only witness was the Salem Fire Chief, who confirmed that, under the current three-person system, there is a "good possibility" that a reduction of a crew from three to two could be a safety consideration.

Having considered that evidence, ERB explained:

"* * * Essentially, all we are saying in the majority opinion is that the IAFF proved its case; i.e., that any change in the current system of staffing fire engines would have a greater effect on employe safety than it would have on management's prerogative to establish staffing levels. That being the case, we believe the proposal at issue (maintenance of current staffing practices or the bargaining over changes) is an appropriate approach to the safety concerns the IAFF wishes to address. * * *"

ERB determined that the specific proposal has a greater effect on employe safety than on staffing prerogatives. This reasoning comports with the spirit of the "balancing test." The fact that ERB bifurcated its reasoning process takes nothing from the balance. No doubt the proposal affects management prerogatives in the allocation of staff. Although the order to bargain over the proposal would not require the City to bargain over the number of engine companies necessary to meet the public need, it is an attempt by the firefighters to require that three persons be assigned to each engine

company that the City determines is necessary. ERB's decision recognizes that, at some point, reductions in personnel levels present safety concerns which are as critical to the conditions of employment as are monetary benefits, hours, vacations, sick leave and grievance procedures. ORS 243.650(7). The evidence presented establishes that personnel levels and safety concerns are interrelated. ERB's decision that safety concerns outweigh management policy in this instance is supported by substantial evidence.

The City's other claim is that ERB's order in this case is inconsistent with earlier cases supporting management's prerogative to determine personnel levels. The City cites *Polk County Deputy Sheriffs Association v. Polk County,* 6 PECBR 4641 (1981), where ERB found that a minimum staffing proposal was a permissive subject of bargaining. In *Polk County,* ERB explained its decision:

"* * * Assuming, without deciding, that a safety/staffing proposal could be framed in 'mandatory' terms, the Association has not done so here. The issue of safety is not raised directly by the language of the proposal but only by extrinsic evidence offered to show the *intent* of the proposal; and since the proposal is unambiguous, and clearly permissive, we have no occasion to consider such evidence." (Emphasis in original.)

We do not read *Polk County* or any earlier ERB decision to preclude a finding that safety concerns have been proven to outweigh management prerogatives in a specific proposal. We conclude that the order is within the interpretation of the law ERB is empowered to make and is supported by substantial evidence.

Affirmed.