Argued and submitted March 30, affirmed August 29, 1984

AFSCME COUNCIL 75, LOCAL 350,
*Respondent,*

*v.*

CLACKAMAS COUNTY,
*Petitioner.*

(C-101-83; CA A29038)

687 P2d 1102

David W. Anderson, Assistant County Counsel, Oregon City, argued the cause for petitioner. With him on the brief was Scott H. Parker, County Counsel, Oregon City.

Wendy L. Greenwald, Eugene, argued the cause for respondent. With her on the brief was Kulongoski, Heid, Durham & Drummonds, Eugene.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Clackamas County appeals an order of the Employment Relations Board (ERB) finding that the county committed an unfair labor practice in refusing to bargain with AFSCME regarding certain subjects covered by the county's civil service system. We affirm.

ORS chapter 241 covers the adoption of civil service systems for county employes. It details specific provisions of a system applicable to counties with populations over 300,000, ORS 241.020 *et seq.,* including a civil service commission, a classification and selection plan and promotions, leaves, and dismissal. ORS 241.002 to 241.009 provide that a county may adopt or amend a civil service system by submission to the county voters, including by initiative or referendum. ORS 241.002(1) provides:

> "If the majority of electors of any county voting at a regular general election pursuant to ORS 241.006 approve a proposal to establish, substitute or amend a system of civil service under which county employes shall be employed, the system or amendments to an existing system of civil service approved by the electors *shall apply to such county.*" Emphasis supplied.)

ORS 241.006 provides:

> "At any general election, if a county does not have in operation a system of civil service for all county employes or if an existing system of civil service for all county employes is to be amended or substituted for by another system, there may be submitted to the electors of the county a proposal:

> "(1) To make ORS 241.020 to 241.990, providing a system of civil service under which county employes shall be employed, applicable to such county;

> "* * * * *

> "(3) That provides a system of civil service which substantially accomplishes the general purposes of ORS 241.020 to 241.990 or 242.702 to 242.824, including methods of recruitment and promotion of county employes by competitive examinations and provisions for job tenure for county employes; or

> "(4) That amends an existing system of civil service previously approved by the electors under subsection (3) of this section."

The facts in this case are not in dispute. In 1961 Clackamas County adopted a civil service system pursuant to ORS 241.002, which was approved by the county voters in accordance with ORS 241.006. The County Civil Service Act provides for promotion based on competitive examination, states the grounds for suspension of an employe and provides for a county civil service commission authorized to adopt regulations providing in detail the manner in which examinations shall be held and appointments, promotions, demotions, transfers, layoffs, reclassifications of employes and positions, reinstatements, suspensions and discharges shall be made.

In 1973 the Oregon legislature passed the Public Employe Collective Bargaining Act (PECBA), ORS 243.650 *et seq.* AFSCME has represented certain Clackamas County employes for collective bargaining purposes for several years. When the union and the county began negotiating the successor to the 1982-1983 contract, AFSCME proposed new terms relating to layoff, recall, discipline, discharge and grievance procedures. Those proposals would either replace or eliminate 1982-1983 contract references to the county civil service commission and its rules.[1] The county took the posi-

---

[1] AFSCME's proposed Article XV retained all prior language except for the following bracketed portion of paragraph 2:

"2. Any regular employee in the bargaining unit who is disciplined in writing, demoted, suspended, or discharged shall have the right to appeal the action through the Grievance Procedure [provided, however, that if the employee files a timely appeal to the Civil Service Commission, the grievance may only be processed through step 3 of the Grievance-Procedure]. The UNION shall submit such grievance as Step 1 of the Grievance procedure not later than ten (10) working days after the effective date of the disciplinary action."

The grievance procedure proposal (Article XVII - Statement of Disputes) similarly made no change in the current process except that bracketed below in paragraph 2, Step V:

"*STEP V.* If the grievance is still unsettled, either party may, within ten (10) working days after the reply of the Board of County Commissioners is due, by written notice to the other party request arbitration [except when the issue at hand is in conflict with existing Civil Service Rules and Regulations, in which case the Civil Service Rules and Regulations shall prevail]."

*AFSCME'S ARTICLE XVI - LAYOFF* would entirely replace the 82-83 provision:

"*ARTICLE XVI*
*LAYOFF* [82-83]

"[1. The parties agree that layoff procedures shall be as set forth in the Rules of the Civil Service Commission in effect as of the date of the layoff.

"2. The Union President and his appointee will attempt to negotiate a mutually acceptable layoff procedure with the Director of the Department of

tion that it had no authority to remove references to the civil service commission, that to agree to such proposals would be illegal and that only a vote of the people could lawfully effect such a change. The union filed an unfair labor practice complaint with ERB, alleging that the county was guilty of refusing to bargain in good faith in violation of ORS 243.672(1)(e). ERB found that the county had committed an unfair labor practice and ordered it to cease and desist from refusing to bargain over the AFSCME proposals. The county appeals, arguing that the subjects of the proposals were covered by the County Civil Service Act and so it was not required to bargain about them under PECBA.[2]

---

Environmental Services and the County Personnel Director. The Committee, upon resolution of an acceptable layoff procedure, will use all its efforts in attempting to pursuade [sic] the Clackamas County Civil Service Commission to adopt the mutually acceptable layoff procedure for employees covered under this contract.]

*"ARTICLE XVI - LAYOFF* (AFSCME PROPOSAL)

"1. In the event it becomes necessary to effect a reduction in the work force in any classification or position in any work unit, the County shall notify affected employees in writing at least fifteen (15) calendar days in advance of the effective date, except in emergency situations.

"2. Affected employees shall be reduced (displaced) from their regular jobs on the basis of seniority within their classification in the work unit, with junior employees being displaced before senior employees.

"3. Displaced employees shall have the right to 'bump' employees within their department, provided the bumping employee has greater seniority than the employee being bumped. If no job exists within the department which the employee is eligible to bump, the employee shall have the right to bump employees in other departments provided the bumping employee has greater seniority than the employee being bumped and is qualified for the job. In no case shall an employee be eligible to bump into a higher classification unless the position is vacant.

"4. Those employees who are left with no job to bump into on the basis of seniority and qualifications shall be laid off from employment and shall be eligible for recall to their classification for a period of two (2) years, without loss of seniority.

"5. Recall shall be on the basis of seniority, with senior employees being recalled before junior employees, and before any new hires or transfers, provided the employee possesses the qualifications for the position. The same applies to any vacant temporary positions.

"6. Employees on layoff status shall have the same rights as other employees in applying for any openings which may occur in the future."

[2] The county makes two assignments of error, which are essentially one. It claims that ERB erred in finding that the Civil Service Act is inapplicable to employees in

We are faced with an apparent conflict between PECBA and the county civil service system enabling statutes. The county is a "public employer," as defined in ORS 243.650(18). Under PECBA, a public employer is required to bargain collectively with the exclusive representative of its employes with respect to "employment relations." ORS 243.672(1)(e); 243.650(4).[3] ORS chapter 241 authorizes a county to establish or amend a civil service system for county employes by methods including submitting a proposal to the electorate. Neither statute refers to the other.

The county argues that the union's proposals involve "job tenure" issues which are not covered by PECBA. It suggests that PECBA and the civil service law may be reconciled by construing the civil service law to cover the "job tenure" issues and PECBA's coverage would not include them. Thus, we must first determine whether the union's proposals are subjects of mandatory bargaining under PECBA.

Mandatory subjects of bargaining are those enumerated in ORS 243.650(7). *Eugene Ed. Assoc. v. Eugene Sch. Dist. 4J,* 58 Or App 32, 34-35, 648 P2d 56 (1982). That statute provides:

> " 'Employment relations' includes, but is not limited to, matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment."

---

collective bargaining units recognized under PECBA and, secondly, in finding the union's proposals mandatory subjects of bargaining. Because the county argues that the proposals were not mandatory subjects of bargaining because they are covered under the Civil Service Act instead of PECBA, the two assignments are in essence one.

[3] ORS 243.672(1)(e) provides:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"Refuse to bargain collectively in good faith with the exclusive representative."

ORS 243.650(4) provides:

" 'Collective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employes to meet at reasonable times and confer in good faith with respect to employment relations, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party. However, this obligation does not compel either party to agree to a proposal or require the making of a concession."

The question is whether the proposals at issue here constitute "employment relations" encompassed by ORS 243.650(7). The county suggests:

"* * * ERB should have harmonized the conflicting statutes to allow the civil service system to apply in the limited sphere substantively mandated by statute, and PECBA to apply to all other employment relations. * * *

"* * * * *

"* * * '[T]erms' of employment are excluded from the scope of employment relations governed by PECBA, * * * PECBA's definition of employment relations does not list the job-tenure subjects addressed by the civil service law (appointment, promotion, tenure, dismissal, demotion, layoff, etc.). These omissions from PECBA support the idea that the legislature intended the civil service law to continue to be applicable to terms of employment and job-tenure issues, while PECBA would govern 'employment relations' such as wages, hours, vacations, sick leave, and those grievance procedures not involving job-tenure decisions."

In its decision, ERB stated:

"* * * Matters dealing with employe discipline and discharge have been defined as conditions of employment under the terms of ORS 243.650(7) and are subject to collective bargaining as defined in ORS 243.650(4). * * *"

 ERB's interpretation of the term "conditions of employment" is one we review for error of law under ORS 183.482(8)(a) to determine whether it coincides with the legislative policy which inheres in the meaning of the statute. *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980). The question on review is whether ERB's interpretation is erroneous, as opposed to whether we would have made a different interpretation. *Springfield Education Assn. v. School Dist., supra,* 290 Or at 234. In the education context, the Supreme Court approved ERB's interpretation of "conditions of employment."

"Here, ERB's formulation of interpretive criteria is an accurate expression of the statutory meaning in that it correctly explains the statute without modifying its meaning. ERB deems those aspects of the evaluation proposals which have a greater impact on employment conditions and a lesser effect on 'educational policy' to be conditions of employment. That interpretation is not erroneous because those aspects

have characteristics similar to the statutory examples of 'monetary benefits, hours, vacations, sick leave' and, particularly, 'grievance procedures,' ORS 243.650(7). Conversely, ERB deems those subjects whose dominant effect is to restrict educational policy (i.e., management prerogatives or proprietary functions as in the private sector) not to be conditions of employment. ERB's interpretation correctly explains the statute and does not change it. Hence, we conclude that it is not an erroneous interpretation and we uphold it." 290 Or at 234.

ERB has applied the same balancing test in other contexts:

> "* * * Where a *subject generally* has a greater effect on working conditions than on management's rights that subject is a condition of employment and is [a] mandatory [subject of bargaining]. * * *" *International Association of Firefighters v. City of Salem,* 7 PECBR 5819, 5825 (1983), *aff'd* 68 Or App 793, 684 P2d 605 (1984). (Emphasis in original.)

ERB has applied the test to find proposals like those here to constitute "conditions of employment" subject to mandatory bargaining. In *Eugene Educ. Assn. v. Eugene School Dist. No. 4J,* 6 PECBR 4849, 4856-57 (1981), ERB concluded that

> "* * * the order in which employes are to be laid off and recalled has a much greater effect on the employes' working conditions than it has on the District's exercise of educational policy, so long as the proposed layoff scheme does not require the District to assign an employe to a position for which he or she is not qualified. The Association's proposal in general simply requires the District to retain the most senior qualified teachers in the event of a layoff, after the District has complied with all applicable laws. The interference with the District's policy rights in such a case is minimal when contrasted with the interest in job security of an employe who may have made a career commitment to the District. * * *"

As in *Eugene Educ. Assn.,* the union's proposal here involved the order of layoff and recalls, and ERB was correct in concluding that the proposals involve "conditions of employment." AFSCME's proposed Articles XV and XVII involve grievance and arbitration procedures for employes disciplined, demoted, suspended or discharged. Grievance procedures are *per se* mandatory subjects of bargaining, and there is no exclusion for grievances related to "job tenure" issues.

■ Thus, the union's proposals are matters about which PECBA requires the county to bargain. The issue is the import of ORS chapter 241 and the county civil service system enacted pursuant to it. We conclude that, when a county civil service system adopted pursuant to ORS chapter 241 covers matters that are "employment relations" under PECBA, and about which a recognized or certified representative desires to bargain, ORS 241.002(1) is inapplicable and the county must bargain over those matters.

■ Oregon appellate decisions have held that a public employer's statutory authority regarding conditions of employment is subject to the requirements of PECBA. *Circuit Court v. AFSCME,* 295 Or 542, 669 P2d 314 (1983); *Lent v. ERB,* 63 Or App 400, 664 P2d 1110, *rev den* 295 Or 617 (1983); *see also Hockema v. OSEA,* 34 Or App 527, 579 P2d 282, *rev den* 283 Or 235 (1978). In *Circuit Court v. AFSCME, supra,* and *Lent v. ERB, supra,* it was concluded that PECBA did not divest the courts of their authority with respect to court employes, but rather set the manner in which that authority is to be exercised. Thus, in itself, a county's authority to establish a civil service system does not render PECBA inapplicable.

The major difference between this case and *Lent v. ERB supra, Circuit Court v. AFSCME, supra,* is that the statutes involved in those cases granted authority, but did not specify procedures by which that authority could be exercised.[4] Thus, there was no inconsistency between the exercise

---

[4] The statutes at issue in *Lent v. ERB, supra,* were ORS 1.002 and 1.008. ORS 1.008(1) provides:

"The Chief Justice of the Supreme Court shall establish and maintain, consistent with applicable provisions of law:

"(1) A personnel plan for officers, other than judges, and employes of the courts of this state who are state officers or employes, governing the appointment, promotion, classification, minimum qualifications, compensation, expenses, leave, transfer, layoff, removal, discipline and other incidents of employment of those officers and employes."

The statute at issue in *Circuit Court v. AFSCME, supra,* was ORS 419.604(1), which provides:

"Subject to subsection (2) of this section, the judge or judges of the juvenile court in any county having a population less than 300,000 shall appoint or designate one or more persons of good moral character as counselors of the juvenile department of the county, to serve at the pleasure of and at a salary

of that authority and the procedures mandated by PECBA. Here, however, ORS chapter 241 provides for procedures that are inconsistent with those of PECBA. A county can not both bargain over "employment relations" *and* have a controlling civil service system adopted by approval of the voters pursuant to ORS 241.006 that covers matters that are "employment relations" under PECBA—unless the system adopted by the voters is by its terms subject to collective bargaining under PECBA. However, we do not find that difference compelling.

■■　　That a county *may* submit a proposal to the voters for approval does not expand the county's authority. As the Supreme Court stated in the municipal home rule context:

> "* * * [U]nder Article IV, section 1(5), local government may legislate either by popular vote or by representative vote, but either way, the legislation must be within the scope of municipal legislative authority. Initiative and referendum are a sharing of legislative power between the people and their representatives, not a grant of additional legislative power to either. * * *" *City of Roseburg v. Roseburg City Firefighters,* 292 Or 266, 286-87, 639 P2d 90 (1981).

Although Clackamas County is not a home rule county, the general principle nevertheless applies that the legislative body's power cannot be made greater because the voters may participate in its exercise. The legislative source of the civil service system is not germane to our inquiry. The county's system is authorized and its content controlled by a state statute which authorizes coverage of certain employment relations that are also covered by PECBA. The proper comparison is between the statutory schemes. We mention the issue to dispel any notion that a civil service system adopted by referendum or initiative procedure has an aura of authority different than one adopted by the county legislative body.

■　　In comparing the statutory schemes, we note that PECBA is later enacted and is more comprehensive. By its terms, its procedures are mandated for all public employers, explicitly including counties, ORS 243.650(18), whereas ORS chapter 241 *permits* counties to adopt a civil service system and *permits* them to submit proposed systems to the voters. In

---

designated by the appointing judge and approved by the budget-making body of the county."

other words, under the statutes, a county is not required to submit a proposed civil service system to the voters, or even to have a civil service system, but a county is required to bargain under PECBA.

To "harmonize" the statutes as the county suggests would defeat the purposes of PECBA. The county's proposed construction would permit a situation in which there would be collective bargaining over some aspects of "employment relations" while at the same time the county (through its legislative process) could unilaterally amend its civil service system regarding other aspects of "employment relations." Such a situation could undermine the collective bargaining process envisioned in PECBA. When the legislature enacted PECBA, it intended that all decisions about "employment relations," when there is a collective bargaining representative, be subject to the same rules.

■ The legislature has described the purposes of PECBA:

> "It is the purpose of ORS 243.650 to 243.782 to obligate public employers, public employes and their representatives to enter into collective negotiations with willingness to resolve grievances and disputes relating to employment relations and to enter into written and signed contracts evidencing agreements resulting from such negotiations. It is also the purpose of ORS 243.650 to 243.782 to promote the improvement of employer-employe relations within the various public employers by providing a uniform basis for recognizing the right of public employes to join organizations of their own choice, and to be represented by such organizations in their employment relations with public employers." ORS 243.656(5).

The statute expresses a legislative intent to provide a uniform basis for employe organizing and bargaining. Those purposes would be subverted if we were to hold that the statute authorizing a county civil service system supersedes the collective bargaining required by PECBA. By adopting comprehensive civil service systems, the counties could foreclose collective bargaining over all of the subjects encompassed by ORS chapter 241, including compensation. *See* ORS 241.210, 241.215. We do not think that the legislature intended that result when it enacted PECBA. Further, the county has not demonstrated how the purposes of chapter 241 would be

thwarted by requiring it to bargain collectively about "employment relations."

In *City of Roseburg v. Roseburg City Firefighters, supra,* the Supreme Court found that Roseburg had committed an unfair labor practice by refusing to bargain collectively with the exclusive representative of the firefighters when the city insisted on applying its local ordinances relating to collective bargaining. There was no question whether the legislature intended PECBA to control over the city's local legislation; the issue discussed was whether that intent would violate the Home Rule Amendments to the Oregon Constitution. Or Const Art XI, § 2, Art IV, § 1(5). Noting, *inter alia,* that

> "* * * PECBA is expressly premised upon a legislative determination that the people of the state have an interest in public employment relations at both the state and local levels of government, * * *" 292 Or at 276,

the Supreme Court concluded that the application of PECBA is not unconstitutional. Although the analysis of whether state legislation prevails over local legislation enacted by a home rule legislative body is not directly applicable in this case it would be incongruous for PECBA to prevail in the home rule context, but not here. *City of Roseburg,* as well as *Lent v. ERB, supra,* and *Circuit Court v. AFSCME, supra,* demonstrate the significance of the state's interest in application of PECBA.

■ The union contends that ORS 243.772 applies, by analogy, if not directly. That provision of PECBA states:

> "Any provisions of local charters and ordinances adopted pursuant thereto in existence on October 5, 1973, and not in conflict with the rights and duties established in ORS 240.060, 240.065, 240.080, 240.123, 243.650 to 243.782, 292.055, 341.290, 662.705, 662.715 and 662.785 may remain in full force and effect after the board has determined that no conflict exists."

That statute applies to a situation very different from that here, because it relates to conflicts between PECBA and purely local legislation, whereas this case involves a conflict between PECBA and another state statute. ORS 241.002 *et seq.* However, the state statute is the one authorizing local legislation. ORS 243.772 is relevant in that it evidences

legislative intent that PECBA's collective bargaining procedures take precedence over local preferences regarding bargaining over "employment relations."

*AFSCME v. Executive Dept.,* 52 Or App 457, 628 P2d 1228, *rev den* 291 Or 771 (1981), is not to the contrary. In that case we were required to consider the relative effects of PECBA (referred to in the case as PERA) and the state civil service law in ORS chapter 240. ORS 240.235(3) provided that the State Personnel Division was to adopt a compensation plan, and that

> "* * * each employe in the classified service *shall be paid* at one of the rates set forth in the compensation plan for the class of positions in which he is employed." (Emphasis supplied.)

The state refused to implement an arbitration award, contending, *inter alia,* that under ORS 240.235 Personnel Division approval of the award was required. We disagreed:

> "There is no indication that in enacting the Public Employment Relations Act, the Oregon Legislature meant to repeal or alter existing civil service law. Therefore, construing the two bodies of law together * * * we conclude * * * that the effect of the PERA is to modify the authority of the State Personnel Division so that, while it retains responsibility for establishing general job salary grades and classifications, the specific salary within each range which is paid to an employe in a public employe bargaining unit is subject to negotiation or arbitration under the terms of ORS ch 243. To conclude otherwise would defeat the purpose of the public employe bargaining statute.

> "Under ORS 243.742(1), for certain state employes, binding, compulsory arbitration is the mandated alternative to a strike over a labor dispute. 'Labor dispute' is defined at ORS 243.650(11) as 'any controversy concerning employment relations * * *'; 'employment relations' is defined at ORS 243.650(7) to include 'direct or indirect monetary benefits.' ORS 243.746(4) sets forth the required arbitration procedure when 'wage rates or other conditions of employment' are in dispute. In addition, the Personnel Division's compensation plan itself is required to be the subject of good faith bargaining between the state and a union 'whenever two or more labor

organizations are certified to represent state employes in like classifications.' ORS 243.696(1).[5]

"We therefore hold that while the State Personnel Division retains the power to group all job positions into classes and to adopt, pursuant to ORS 240.235(1), for each class or position, a salary range which includes maximum, minimum and intermediate positions, that: (1) the establishment of the compensation plan itself can be a subject for bargaining between the state and the labor organizations and (2) the individual wage rates for public employes in collective bargaining units are to be set within the negotiated ranges. Where the bargaining process breaks down, and the employes are forbidden by law from striking, the arbitrator has been given the authority to set new salaries for those employes. The Personnel Division does not have the authority to approve these rates. * * *" 52 Or App at 470-71. (Footnotes omitted.)

 The county relies heavily on that case in urging us to find that the county civil service law applies to certain aspects of employment and PECBA applies to others. In that case, we resolved the conflicts between the civil service law and PECBA by reconciling the inconsistent provisions respecting setting of wage rates. We held that the Personnel Division authority to set wages of covered employes was modified by

---

[5]At the time of the events in *AFSCME v. Executive Dept., supra,* ORS 243.696(1) provided:

"Notwithstanding any other provision of this chapter, whenever two or more labor organizations are certified to represent state employes in like classifications, the State of Oregon and the certified labor organization shall meet jointly at reasonable times and bargain in good faith for the purpose of establishing the compensation plan and other economic benefits, and those employment relations matters which require legislative action or are the subject of Personnel Division rulemaking authority. * * *"

Effective July 1, 1981, that language was deleted, and the following provisions added:

"(2) Notwithstanding any of the provisions of ORS 240.235, 240.306, 240.316, 240.430 and 240.551, employes of state agencies who are in certified or recognized appropriate bargaining units shall have all aspects of their wages, hours and other terms and conditions of employment determined by collective bargaining agreements between the state and its agencies and the exclusive employe representatives of such employes pursuant to the provisions of ORS 243.650 to 243.762, except with regard to the recruitment and selection of applicants for initial appointment to state service.

"(3) The provisions of rules adopted by the division, the subjects of which are incorporated into collective bargaining agreements, shall not be applicable to employes within appropriate bargaining units covered by such agreements." ORS 240.321(2)(3); 1979 Or Laws, ch 468, §§ 24, 25, 38.

the provisions of PECBA. Wage rates was the only issue involved in that case. We noted that setting of wages is an employment relation and a subject of mandatory bargaining under PECBA. Implicit in our holding is a conclusion that employment relations that are mandatory subjects of bargaining must be resolved through the procedures of the employe collective bargaining statute. The approach adopted in that case is appropriate in resolving the conflict involved in this case. The county's authority through its civil service system to set conditions of employment that are mandatory subjects of bargaining is modified by the procedural requirements of PECBA. Its argument that certain of the union's proposals could be classified as "job tenure" subjects and could be controlled by the county civil service system is misplaced. Labeling the proposals as something other than employment relations does not change their character. ERB correctly concluded that the proposals at issue are all matters of employment relations that are subject to the mandatory bargaining requirements of PECBA. The county has not demonstrated that ERB was wrong in its conclusion or why the proposals they classify as "job tenure" issues are not mandatory subjects of bargaining. It follows that the county committed an unfair labor practice by refusing to bargain over AFSCME's proposals.

Affirmed.