THE CITY OF DECATUR, Petitioner-Appellant, v. THE ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

Fourth District   No. 4—86—0127

Opinion filed October 30, 1986.

John W. Couter, Assistant Corporation Counsel, of Decatur, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield, and J. Dale Berry, of Cornfield & Feldman, of Chicago (Roma Jones Stewart, Solicitor General, and Imelda R. Terrazino, Assistant Attorney General, of Chicago, of counsel), for respondents.

JUSTICE GREEN delivered the opinion of the court:

The issue here is whether the Illinois Public Labor Relations Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 1601 *et seq.*), requires a city to bargain in good faith with the exclusive representative of its employees over the proposal that matters of discipline, currently resolved by reference to the civil-service provisions of the Municipal Code of 1961 (Ill. Rev. Stat. 1985, ch. 24, par. 10—1—1 *et seq.*), be resolved by mandatory arbitration. We hold that the Act does not require collective bargaining on that proposal.

On June 11, 1985, respondent, American Federation of State, County, and Municipal Employees, Local 268 (Local 268), filed charges with respondent, the Illinois State Labor Relations Board (Board) pursuant to section 11(a) of the Act (Ill. Rev. Stat. 1985, ch 48, par. 1611(a)), alleging that petitioner, the city of Decatur (city), was engaging in an unfair labor practice during negotiations for a new collective-bargaining agreement by refusing to bargain in regard to Local 268's previously described proposal. The city agreed that it was refusing to bargain on that issue. After a hearing before a hearing officer, the Board issued an order on January 29, 1986, approving a recommended order by the hearing officer finding that the city was required to bargain on the issue and that it was guilty of an unfair labor practice. The order also required the city to cease and desist from the practice. The city has appealed to this court pursuant to section 11(e) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e)). We reverse.

Consideration of several sections of the Act is necessary to a determination of the issue presented. The most important of these is section 7, which sets forth in its first two paragraphs that an employer and the exclusive representative had a duty to bargain collectively. This duty includes a requirement "to negotiate in good faith with respect to wages, hours, and other conditions of employment" not excluded by a management-rights provision of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1607). (The parties agree that the management-rights provision, contained in section 4 (Ill. Rev. Stat. 1985, ch. 48, par. 1604), is not applicable to the question concerning disciplinary procedures involved here.) The third paragraph of section 7 then states:

"The duty 'to bargain collectively' shall also include an obli-

gation to negotiate over any matter with respect to wages, hours and other conditions of employment, *not specifically provided for in any other law or not specifically in violation of the provisions of any law. If any other law pertains, in part, to a matter affecting the wages, hours and other conditions of employment, such other law shall not be construed as limiting the duty 'to bargain collectively'* and to enter into collective bargaining agreements *containing clauses which either supplement, implement, or relate to the effect of such provisions* in other laws." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 48, par. 1607.

Two other sections of the Act are also significant. Section 8 provides that a collective-bargaining agreement entered into under the Act "shall contain a grievance resolution procedure" applicable to all employees and "shall provide for final and binding arbitration of disputes concerning the administration or interpretation of the agreement unless mutually agreed otherwise" (Ill. Rev. Stat. 1985, ch. 48, par. 1608). Section 15(a) of the Act states:

"In case of any conflict between the provisions of this Act and any other law, executive order or administrative regulation relating to wages, hours and conditions of employment and employment relations, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control." Ill. Rev. Stat. 1985, ch. 48, par. 1615(a).

The essence of the city's contention that it was not required by the Act to bargain with Local 268 on the issues involved is that (1) the statement in section 7 that its duty concerns matters "not specifically provided for in any other law or not specifically in violation of the provisions of any law" must be taken to mean what it says; (2) the second sentence, which refers to laws which pertain "in part" to wages, hours, and other conditions of employment, creates only a duty to bargain in regard to matters not specifically provided for in the law but which implement, supplement, or relate to the law but do not conflict with the law; and (3) the civil-service provisions of article 10 of the Municipal Code of 1961 which were adopted by referendum by the city before the enactment of the Act constitute "law" within the meaning of section 7.

The city also maintains that the statement in section 15(a) indicating that the terms of a collective-bargaining agreement control over other laws does not negate the exclusions from required bargaining set forth in section 7. The city asserts that section 15(a) gives a power to bargain which covers a larger area than that upon which bargain-

ing is mandated. It notes that section 15(a) makes no reference to a duty to bargain. In regard to its duty to bargain over matters which merely implement, supplement, or relate to existing laws, the city concedes that Local 268's request for a prohibition against compulsory polygraph examinations being imposed upon its employees is a matter upon which it is required to bargain.

Local 268 and the Board maintain that the limitations placed upon the duty to bargain by section 7 because of the existence of other laws should be construed narrowly to effectuate what they consider to be the remedial nature of the Act, its stated purpose of regulating labor relations between public employers and employees, and its policy of enabling employees to choose representatives to bargain over matters of their interest. (Ill. Rev. Stat. 1985, ch. 48, par. 1602.) They point out that sections 4, 6, and the second paragraph of section 7 all speak of the duty of employers to bargain in regard to wages, hours, and conditions of employment without any statement of restriction except those of the managerial rights of the employer. Local 268 and the Board also contend that the requirements of section 8 for a grievance-resolution procedure and the precedence given by section 15(a) to terms of a collective-bargaining agreement over other laws are inconsistent with the city's contention that the adoption by the city of the civil service provisions of the Municipal Code relieve the city of the obligation to bargain on the issue involved.

The most serious argument presented by Local 268 and the Board concerns the fact that the city is, admittedly, a home rule city. They are concerned with the possible ability of the city and other home rule units to exercise those home rule powers to immunize themselves from bargaining on various matters concerning wages, hours, and conditions of employment by enacting ordinances or regulations which would have the force of law and thus invoke the restrictions of section 7. At oral argument, Local 268 illustrated this argument by reminding us that in *Peters v. City of Springfield* (1974), 57 Ill. 2d 142, 311 N.E.2d 107, the court held that a home rule city which had previously adopted civil-service provisions of article 10 of the Municipal Code of 1961 had the power by ordinance to adopt conflicting requirements which pertained to mandatory retirement. Local 268 also expressed concern about administrative regulations which might be deemed to constitute laws within the meaning of section 7 and place restriction upon the issues upon which negotiation is mandated. Local 268 and the Board argue convincingly that the legislature could not have intended to allow home rule cities to insulate themselves in this way from the duty to bargain on some issues.

■ However, we do not resolve the foregoing problem by construing the word "law" in section 7 as excluding the civil-service provisions of the Municipal Code of 1961 as adopted by cities. Rather, for reasons subsequently stated, we construe the word "law" in section 7 as excluding ordinances and regulations enacted by units of local government. Although we know of no Illinois case which is precedent on the subject, we note that, in other jurisdictions, ordinances are not always considered to be laws. (56 Am. Jur. 2d *Municipal Corporations* sec. 345, at 371 (1971).) Regulations issued pursuant to a statute are often deemed to "have the force of law." (See *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 390, 356 N.E.2d 93, 97; 2 Am. Jur. 2d *Administrative Law* sec. 295, at 122 (1262).) Clearly, if an ordinance enacted by a unit of local government is not a "law" within the meaning of section 7, a regulation adopted by the unit would not be a "law."

Our conclusion that the exercise of the home rule power of units such as the city does not make "law" within the provisions of section 7 is supported by the language of the Illinois Constitution of 1970, article VII, section 6 (Ill. Const. 1970, art. VII, sec. 6). Nowhere does it speak of an enactment of a home rule unit as a "law." Rather, section 6 speaks of the powers a home rule unit possesses in these words: (1) in subsection (e) of "the power that the *General Assembly may provide by law*" in regard to the infliction of certain punishments and certain licensing and taxing measures; and (2) in subsection (f) of a power to "adopt, alter or repeal" a form of government and a power to provide for its officers and their method of selection and tenure "only as approved by referendum or as otherwise authorized by *law.*" (Emphasis added.) (Ill. Const. 1970, art. VII, secs. 6(e), (f).) In subsections (g), (h), (i), (j), (k), and (l) of section 6, the Constitution speaks of the General Assembly limiting or granting "by *law*" certain powers of a home rule unit. (Emphasis added.) (Ill. Const. 1970, art. VII, secs. 6 (g), (h), (i), (j), (k), (l).) Section 6 clearly restricts the use of the word "law" to enactments of the General Assembly.

One of the two cases relied upon most heavily by Local 268 and the Board in support of their contention that the restrictive provisions of section 7 should be given a very narrow construction is *AFSCME Council 75, Local 350 v. Clackamas County* (1984), 69 Or. App. 488, 687 P.2d 1102. There, the court held that a county was required under a labor-relations statute (Or. Rev. Stat. sec. 243.650 *et seq.* (1984)) to bargain with its employees' union over changes in procedures in relation to such matters as discharge, layoff, and grievance. The changes requested by the union were in conflict with the existing statute pro-

viding for a civil-service system which the county had opted to adopt. That court emphasized that the labor-relations statute was (1) more recently enacted; (2) mandatory upon the county, while the civil-service statute was optional; and (3) intended to be more comprehensive than the civil-service statute. In each of those respects, the situation in *Clackamas County* was similar to that in the instant case. However, that case was materially dissimilar in that, there, the labor-relations statute contained no language corresponding to the restrictions upon the bargaining requirement set forth in section 7 of the Act.

The other case upon which Local 268 and the Board placed emphasis is *Pennsylvania Labor Relations Board v. State College Area School District* (1975), 461 Pa. 494, 337 A.2d 262, where the refusal of a school district to bargain with the representative of its employees was also in issue. The labor-relations legislation applicable there did contain a provision quite similar to section 7. Most of the opinion concerned the operation of the managerial-rights section of the labor-relations statute, but the court did pass upon the provision of the labor-relations law which stated that bargaining was not required on proposals violative of existing laws. The court held that limitation was not applicable to points that were merely "covered by legislation" but was applicable to proposals that "would be in violation of or inconsistent with any statutory directive." (461 Pa. 494, 508, 337 A.2d 262, 269.) As an example of the operation of that provision, the court indicated that legislation fixing minimum salaries for teachers would prevent required bargaining on the question of whether salaries should be reduced below the minimum but not in regard to salaries in an amount above that minimum. (461 Pa. 494 508-09, 337 A.2d 262, 269.) The holding in *Pennsylvania Labor Relations Board* is consistent with a determination here that the city is not required to bargain over matters that would change the procedures mandated by the express provisions of article 10 of the Municipal Code. However, it is required to bargain over matters related to its provisions but not expressly set forth therein such as the question of whether employees can be required to submit to polygraph examinations.

■ We recognize the deference courts must give to administrative interpretations of statutes which are ambiguous. (*Illinois Consolidated Telephone Co. v. Illinois Commerce Com.* (1983), 95 Ill. 2d 142, 447 N.E.2d 295.) We agree that other provisions of the Act somewhat impair the clarity of the otherwise clear language of section 7 of the Act. However, the statements in section 15(a) of the Act in regard to collective-bargaining agreements having precedence over other laws is adequately explained by the city as being applicable only to matters

that have been agreed upon and as not touching the scope of matters upon which negotiation must take place. The mandatory grievance procedures required by section 8 of the Act are similar to those required by section 10(c) of the Illinois Educational Labor Relations Act. (Ill. Rev. Stat. 1985, ch. 48, par. 1710(c).) Yet, Local 268 admits that those provisions do not negate the ability of section 10(b) thereof (Ill. Rev. Stat. 1985, ch. 48, par. 1710(b)) to foreclose from issues upon which collective bargaining is required, the statutory procedural rights of tenured teachers available when a school district attempts to discharge them. Even though several sections other than section 7 speak in terms of an employer's duty to bargain and list only matters of managerial rights as an exception to the duty, we find no substantial ambiguity in section 7 of the Act.

Moreover, the administrative agency involved here, the Board, is a new agency and has not yet acquired the familiarity with the wording of the Act which is the basis for the required deference. We note that in the hearing officer's decision which the Board adopted, the city's (there designated as the respondent's) reliance on section 7 was stated to be "incorrect" because of the statement in section 7 that "[i]f any other law pertains, in part, to a matter affecting the wages, hours and other conditions of employment, such other law shall not be construed as limiting the duty 'to bargain collectively.'" No mention was made that the words following those quoted state that the bargaining thus required covers only "clauses which either supplement, implement, or relate to the effect of such provisions in other laws." Ill. Rev. Stat. 1985, ch. 48, par. 1607.

We recognize the existence of some trend toward interpreting public-sector statutory requirements for collective bargaining to supersede existing statutory provisions which conflict with the proposal on which the bargaining is sought. (*Local 1383, International Association of Fire Fighters v. City of Warren* (1981), 411 Mich. 642, 311 N.W.2d 702; *AFSCME Council 75, Local 350 v. Clackamas County* (1984), 69 Or. App. 488, 687 P.2d 1102.) However, such an interpretation has prevailed only when the statute requiring the bargaining makes no exception for the matters "provided for in other law[s]." Here, we would be giving little significance to the exceptions of section 7 if we did not include the express civil-service provisions of article 10 of the Municipal Code as matters "provided for in other law[s]." As we have noted, the Illinois Educational Labor Relations Act exempts the statutory procedural rights of tenured teachers from being a matter of required negotiation. We do not find a sufficient reason to conclude that a different policy was intended in regard to

the statutory procedural rights concerning the tenure of employees of other units of local government.

As we have indicated, we are concerned about the contention of Local 268 and the Board that the city is a home rule unit and can opt by ordinance to withdraw from the provisions of article 10 of the Municipal Code. However, as we have indicated, we determine that any ordinance the city might enact would not be a "law" within the meaning of section 7. Thus, if the city partially or totally negates the statutory civil-service provisions in question, the matters negated would no longer be matters of law and would become subject to mandatory negotiation. Similarly, if the city or any other unit of local government should attempt by ordinance or regulation to remove any issue from the ambit of required bargaining, they would not be successful. The enactment would not be "law" within the meaning of section 7 of the Act.

We consider our determination that ordinances and regulations enacted by a unit of local government are not "law" within the meaning of section 7 to be essential to our holding that the city is not required to bargain in regard to procedures that would conflict with the adopted civil-service requirements of the Municipal Code.

The record is not entirely clear as to whether the city has refused to bargain over such matters related to or implementing the statutory civil-service provisions as the polygraph-examination issue. If so, the city would have been guilty of an unfair labor practice, and the Board's order should be affirmed in that respect. In any event, virtually the entire body of the dispute between the parties concerned the question of whether section 7 excluded the civil-service provisions from the bargaining requirement. In a footnote to its order, the Board wisely stated that the dispute between the parties concerned a matter of first impression and found no bad faith on the part of the city. Similarly, even if the city were in error in a minor way in its refusal to bargain, no useful purpose would be served in affirming that portion of the Board order. The city admits it must bargain on that issue. Accordingly, we reverse the order from which appeal is taken.

Reversed.

WEBBER and SPITZ, JJ., concur.