Argued and submitted December 9, 1987, affirmed August 10, reconsideration denied
September 23, petition for review allowed November 16, 1988 (307 Or 145)

## SALEM POLICE EMPLOYEES UNION,
*Respondent,*

*v.*

## CITY OF SALEM,
*Petitioner.*

## (ERB UP-2-87; CA A43945)

758 P2d 427

Paul A. Lee, Assistant City Attorney, Salem, argued the cause for petitioner. With him on the briefs was William J. Juza, City Attorney, Salem.

Daryl Ann Wilson, Portland, argued the cause for respondent. With her on the brief were Steven J. Johansen, Certified Law Student, and Tedesco and Wilson, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

### BUTTLER, P. J.

The City of Salem (City) seeks judicial review of an order of the Employment Relations Board (ERB) holding that City committed an unfair labor practice when it refused to bargain with the Salem Police Employees Union (Union) over a proposed reserve police officer program adopted by City. We affirm.

The underlying facts are not disputed. Union's bargaining unit consists of approximately 105 officers, 78 of whom work in the patrol section. Patrol officers usually patrol alone and are responsible for policing the streets, enforcing laws and preventing crime. The number of sworn officers has decreased in the period from 1982 to 1986, while the number of reported crimes has increased.

In August, 1986, City adopted a reserve police officer program "[t]o provide the department with sworn volunteer reserve police officers trained to support its members in their respective assigned duties." Under the program the reserves would be volunteers who would work part-time and receive no compensation. They would receive training comparable to that received by regular patrol officers and, after completing training, would be sworn and entitled to carry a weapon. A reserve officer would always work as an assistant to a regular patrol officer, but the reservist would have the same legal authority and responsibility as a regular officer. A regular officer would have the option to accept or reject a reserve officer as an assistant. The reserve program was developed by the Chief of Police, and its provisions are subject to amendment by the Chief at any time. ERB concluded that City violated ORS 243.672(1)(e)[1] by establishing the reserve program without first bargaining in good faith with Union.

Under the Public Employes Collective Bargaining Act, ORS 243.650 to ORS 243.782, City is required to bargain collectively with Union with regard to "employment rela-

---

[1] ORS 243.672(1)(e) provides:

"(1) It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(e) Refuse to bargain collectively in good faith with the exclusive representative."

tions." ORS 243.650(4);[2] *AFSCME v. Clackamas County,* 69 Or App 488, 493, 687 P2d 1102 (1984). ORS 243.650(7) provides:

> " 'Employment relations' includes, but is not limited to, matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment."

A public employer that refuses to negotiate over "employment relations" commits an unfair labor practice. *Portland Firefighters Assoc. v. City of Portland,* 305 Or 275, 751 P2d 770 (1988).

ERB concluded that City's implementation of the reserve program was analogous to a transfer of bargaining unit work, commonly referred to as subcontracting, and that City was required to bargain with Union before implementing the program. City first argues that the reserve program will not result in any work which is currently being performed by bargaining unit members being transferred to the volunteers. It argues that the reserve program will simply expand the scope of existing police activities and that, therefore, no "transfer" of duties will occur.

According to ERB, the term "bargaining unit work" is not limited to work currently being performed by the unit members but extends to "all police officer activities on behalf of the City." The reserve program would allow an expansion of police services, as City states, and at least some of that work would be performed by volunteers outside the bargaining unit. ERB found that, because the reserves can be used to perform the same work as the regular officers, that will create safety risks for regular officers and will impair job security and overtime opportunities. In addition, their presence will allow City to forestall the hiring of new officers and potentially affect the layoff of current officers. Those findings are supported by

---

[2] ORS 243.650(4) provides:

" 'Collective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employes to meet at reasonable times and confer in good faith with respect to employment relations, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party. However, this obligation does not compel either party to agree to a proposal or require the making of a concession."

substantial evidence, and they support ERB's conclusion that the reserve program, although it would use volunteers solely as assistants to sworn officers, would constitute a transfer of bargaining unit work.

City's arguments to the contrary rely heavily on the provisions of the program that allow regular officers to accept or reject the assistance of a reservist and the prohibition against reservists patrolling alone. It is clear, however, that the Chief may modify or eliminate those provisions at any time, even after the program is in effect. There is substantial evidence to support ERB's finding that the reserve program will result in bargaining unit work being performed by non-unit personnel. Therefore, ERB's conclusion that the program was analogous to subcontracting is supported by the findings.

City also argues that ERB erroneously interpreted and applied the applicable law in ruling that transfer of bargaining unit work to volunteers constitutes subcontracting under ERB's past decisions. It asserts that ERB's rulings in other cases do not support that conclusion. ERB is an agency invested by the legislature with the authority to make findings, conclusions and rulings. It has authority to make decisions and to follow, reject, interpret or extend them to new facts. Our function is to determine whether substantial evidence supports its findings, that its findings support its conclusions and that its decisions comport with law. In ruling that the reserve program constitutes subcontracting, ERB acted within its discretion and followed the applicable law.

City contends that ERB misapplied the law by extending the so-called subcontracting test, discussed below, to unpaid volunteers who do bargaining unit work. Although subcontracting is not specifically mentioned in the definition of "employment relations" in ORS 243.650(7), ERB concluded that City is required to bargain over the reserve program, because the program will affect the employment conditions of regular officers. We review ERB's interpretation of the term "other conditions of employment" for errors of law under ORS 183.482(8)(a) to determine whether it coincides with the legislative policy which inheres in the statute. The question is whether ERB's interpretation is erroneous, not whether we would interpret it differently. *AFSCME v. Clackamas County, supra,* 69 Or App at 494.

■      ERB traditionally has employed a balancing test to determine whether a subject is a condition of employment under ORS 243.650(7). The effect on working conditions is weighed against the rights of management. *See AFSCME v. Clackamas County, supra,* 69 Or App at 494-95. The test is the result of the legislature's directive to ERB to construe a proposal as an "other condition of employment" only if it embodies the same characteristics as the subjects enumerated in the statute: monetary benefits, hours, vacation, sick leave and grievance procedures. *Portland Firefighters Assoc. v. City of Portland, supra,* 305 Or at 282. The scope of the definition of "other conditions of employment" must be broad enough to encompass all matters over which labor disputes are likely to arise. 305 Or at 283.

Here, ERB employed a test specifically tailored to determine whether an employer must bargain over a proposal to transfer bargaining unit work, that is, subcontracting. That test, which ERB developed in *FOPPO v. Corrections Division,* 7 PECBR 5649 (1983), involves a consideration of all factors in balancing the employer's right to manage against the effects of the decision on the bargaining unit. The test is similar to the one discussed above to determine *if* a subject constitutes a condition of employment under ORS 243.650(7). The subcontracting test determines whether a proposal *affects* conditions of employment. ERB explained the analysis in *FOPPO:*

> "An 'all-things-considered' approach is particularly appropriate in subcontracting cases because it allows the adjudicator to balance the employer's right to manage its enterprise against the effects of the decision on the bargaining unit in light of *all* relevant circumstances—e.g., the motive or reason for the decision, the nature of the work affected, the parties' collective bargaining history, the past practices of the employer. To hold that the contracting out of any 'bargaining unit work' during a contract term is always mandatory for bargaining would require us to ignore the very real problems employers may face in operating their enterprises. To hold, on the other hand, that such subcontracting is never mandatory for bargaining would require us to ignore the equally real interests of employes in their job security and in reasonably anticipated work opportunities." 7 PECBR at 5655.

■      As ERB pointed out in this case, the National Labor

Relations Board established guidelines for this kind of balancing in *Westinghouse Electric Corp.,* 150 NLRB 1574, 58 LRRM 1257 (1965). ERB summarized the *Westinghouse* approach:

> "[A]n employer must bargain about a decision to subcontract if *any* of the following conditions are present:
>
> "(1) The subcontracting plan involves a departure from previously established operating policies, (2) it changes conditions of employment for bargaining unit members, or (3) it results in significant impairment of job tenure, employment security, or reasonably anticipated work opportunities for bargaining unit employes. On the other hand, the Board stated that bargaining is not required where *all* of the following tests are met: (1) the contracting out plan is motivated solely by economic considerations, (2) it comports with traditional methods by which the employer conducts business, (3) it does not vary significantly from previous subcontracting, (4) it has no adverse impact on employes in the bargaining unit, and (5) the union has an opportunity to bargain about changes in subcontracting practices during normal negotiation sessions." (Emphasis in original.)

Although it recognized that this case is not one in which the employer has decided to contract out certain functions or to transfer duties from one bargaining unit to another, the typical kinds of cases in which the subcontracting test is applied, ERB concluded that the situation is analogous and applied that test here. City does not contend that the *FOPPO* test is not a proper one; rather, it contends that ERB erred in applying it to the use of unpaid volunteers. It does not contend that ERB did not have authority to do so, only that it failed to follow *FOPPO.* In the absence of any claim that ERB acted beyond its delegated powers, the only issue is whether ERB's decision is based on substantial evidence. We have concluded, for the reasons stated above, that it is.

■ City's third assignment of error is that ERB erroneously interpreted and misapplied the *FOPPO* test when it ruled that the reserve program would have more than a *de mimimis* impact on working conditions. City's main contention is that ERB relied primarily on the fact that the Chief might change the program, rather than analyzing the program as it is presently constituted. It points to ERB's ruling that

"the wide range of potential effects of the program is sufficient to remove it from the *de minimis* category."

We believe that ERB relied on more than the capacity of the Chief to change the procedure when it ruled that the program would have a significant effect on employment relations. The phrase "potential effects" clearly encompasses the consequences of City's implementation of the current program, as well as its possible modifications. ERB also pointed out that the program implicates other concerns: safety and hours, for example. Therefore, ERB acted within its authority in applying the *FOPPO* test and its *de minimis* component to this case. Neither is there, as City argues in its fourth assignment of error, a lack of substantial evidence to support ERB's finding that the reserve program has more than a *de minimis* impact on the working conditions of the regular officers. For the same reasons that there is substantial evidence to support ERB's finding that the reserve program effects a transfer of bargaining unit work, there is substantial evidence to support the finding that the program has more than a *de minimis* impact.

Finally, City argues that ERB failed to balance the reserve program's impact on bargaining unit members against City's right to make management decisions. It is clear, however, that ERB followed the *FOPPO* test, under which, once it is determined that there is more than a *de minimis* impact, City is required to bargain if the plan involves a departure from previous policy or changes conditions of employment for bargaining unit members that outweigh management prerogatives. ERB applied the *FOPPO* test to these facts and came to a conclusion that is legally valid and is supported by substantial evidence.

Affirmed.