(Nos. 64464, 64483 cons.—

THE CITY OF DECATUR, Appellee, v. THE AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, LOCAL 268, Appellant.—THE CITY OF DECATUR, Appellee, v. THE ILLINOIS STATE LABOR RELATIONS BOARD, Appellant.

*Opinion filed March 30, 1988.—Rehearing denied May 31, 1988.*

J. Dale Berry, of Cornfield & Feldman, of Chicago, for appellant American Federation of State, County and Municipal Employees, Local 268.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, Imelda R. Terrazino, Assistant Attorney General, and Jacalyn J. Zimmerman, all of Chicago, of counsel), for appellant Illinois State Labor Relations Board.

John W. Couter, Assistant Corporation Counsel, of Decatur, for appellee.

Thomas F. Sonneborn and Wayne M. Klocke, of Springfield, for *amici curiae* Associated Fire Fighters of Illinois *et al.*

Lester Asher and Joel A. D'Alba, of Chicago (Asher, Pavalon, Gittler & Greenfield, Ltd., of counsel) and Sherman Carmell, of Chicago (Carmell, Charone, Widmer & Mathews, Ltd., of counsel), for *amici curiae* Illinois State Federation of Labor and Congress of Industrial Organizations *et al.*

Donald W. Anderson, of Chicago (Seyfarth, Shaw, Fairweather & Geraldson, of counsel), for *amicus curiae* Illinois Public Employer Labor Relations Association.

JUSTICE MILLER delivered the opinion of the court:

Following a complaint by the American Federation of State, County, and Municipal Employees, Local 268, alleging the commission of an unfair labor practice by the City of Decatur, the Illinois State Labor Relations Board entered an order directing the city to bargain over a proposal by the union that would permit employees to submit disciplinary grievances to arbitration. On administrative review, the appellate court reversed the State Board's order and held that the city could not be required to bargain over the union's proposal. (149 Ill. App. 3d 319.) We allowed the petitions for leave to appeal filed by Local 268 and the State Board (see 107 Ill. 2d R. 315(a)), consolidated the appeals for purposes of argument and disposition, and now reverse the judgment of the appellate court.

The dispute in this case concerns the scope of bargaining required by the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1601 through 1627) (the Act). On June 11, 1985, Local 268 of the American Federation of State, County, and Municipal Employees (AFSCME) filed a charge with the Illinois State Labor Relations Board alleging that the City of Decatur was guilty of committing an unfair labor prac-

tice under sections 10(a)(1) and 10(a)(4) of the Act (Ill. Rev. Stat. 1985, ch. 48, pars. 1610(a)(1), (a)(4)). The city had previously recognized Local 268 as the exclusive bargaining representative of a certain unit of employees, and, at the time the controversy arose, the parties were negotiating the terms of a new collective-bargaining agreement, their old agreement having expired on April 30, 1985. It is undisputed that the city is a public employer within the meaning of section 3(h) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1603(h)) and that the charging party, AFSCME, Local 268, is a labor organization within the meaning of section 3(i) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 1603(i)). The basis for the unfair labor practice charge was the city's refusal to bargain over a union proposal that would permit employees to submit disciplinary grievances to arbitration. The voters of the city had previously adopted, by referendum, a civil service commission under article 10, division 1, of the Illinois Municipal Code (see Ill. Rev. Stat. 1985, ch. 24, pars. 10—1—1 through 10—1—48), and it was the city's view that there was no duty to bargain over disciplinary matters that fell within the scope of the municipal civil service system.

The State Board issued a formal complaint on the matter. Following a hearing, the hearing officer rendered a recommended decision and order on December 2, 1985, concluding that the city was required to bargain over the union's proposal. The State Board adopted the hearing officer's recommendation and ordered the city to bargain with Local 268 over the matter at issue.

The city sought review of the State Board's decision, and the appeal was taken to the appellate court, as provided under the Act. (See Ill. Rev. Stat. 1985, ch. 48, par. 1611(c).) The appellate court reversed the State Board's order, holding that the city was not required to bargain over the union's proposal for arbitration of disci-

plinary matters. In this court, a number of organizations have appeared as *amici curiae* and have submitted briefs in support of and opposition to the decisions below.

The Act imposes on a public employer the duty to bargain collectively with the exclusive bargaining representative designated for an appropriate bargaining unit of public employees. "Collective bargaining" is defined in the Act as "bargaining over terms and conditions of employment, including hours, wages and other conditions of employment, as detailed in Section 7 and which are not excluded by Section 4." (Ill. Rev. Stat. 1985, ch. 48, par. 1603(b).) Section 4 of the Act contains a management rights provision; it excludes from the bargaining duty "matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer, standards of services, its overall budget, the organizational structure and selection of new employees, examination techniques and direction of employees." (Ill. Rev. Stat. 1985, ch. 48, par. 1604.) The dispute in this case centers on section 7 of the Act, which provides, in pertinent part:

> "A public employer and the exclusive representative have the authority and the duty to bargain collectively set forth in this Section.
>
> For the purposes of this Act, 'to bargain collectively' means the performance of the mutual obligation of the public employer or his designated representative and the representative of the public employees to meet at reasonable times, including meetings in advance of the budget-making process, and to negotiate in good faith with respect to wages, hours, and other conditions of employment, not excluded by Section 4 of this Act, or the negotiation of an agreement, or any question arising thereunder and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to

agree to a proposal or require the making of a concession.

The duty 'to bargain collectively' shall also include an obligation to negotiate over any matter with respect to wages, hours and other conditions of employment, not specifically provided for in any other law or not specifically in violation of the provisions of any law. If any other law pertains, in part, to a matter affecting the wages, hours and other conditions of employment, such other law shall not be construed as limiting the duty 'to bargain collectively' and to enter into collective bargaining agreements containing clauses which either supplement, implement, or relate to the effect of such provisions in other laws." Ill. Rev. Stat. 1985, ch. 48, par. 1607.

The parties here agree that the union's proposal is not excluded from bargaining under the management rights provision of the Act. Moreover, the city acknowledges that the proposal would constitute a mandatory subject of bargaining were it not for the accommodation provision and the city's earlier adoption of the civil service provisions in article 10, division 1, of the Municipal Code. It has been the city's position throughout these proceedings that the scope of its duty to bargain is limited by the language in the third paragraph of section 7: "The duty 'to bargain collectively' shall also include an obligation to negotiate over any matter with respect to wages, hours and other conditions of employment, not specifically provided for in any other law or not specifically in violation of the provisions of any law." (Ill. Rev. Stat. 1985, ch. 48, par. 1607.) The city contends that the union's proposal for final and binding arbitration of disciplinary grievances would supplant certain of the statutory civil service provisions adopted by the city and therefore would constitute a matter that is "specifically provided for" in another law. The city concludes that it has no duty to bargain over the union's proposal.

This argument was rejected by the hearing officer in her recommended decision and order. There the hearing officer said:

"Respondent's [*i.e.*, the city's] refusal to bargain is based on language in Section 7 of the Act, which states that the duty to bargain only applies to 'wages, hours and other conditions of employment, not specifically provided for in any other law ***.' Respondent's reliance on this section is incorrect, however. Reading further, Section 7 says that 'if any other law pertains, in part, to a matter affecting the wages, hours and other conditions of employment, such other law shall not be construed as limiting the duty to bargain collectively ***.' To adopt Respondent's position is to allow exactly that which Section 7 prohibits. To allow the adoption of a civil service system to eliminate an employer's obligation to bargain over disciplinary matters would clearly limit an employer's duty to bargain collectively. Section 7 specifically prohibits such a finding."

Following the submission of the city's exceptions to the hearing officer's recommended decision and order, and of the union's response to the exceptions, the State Board concluded "that the Hearing Officer properly analyzed all issues presented and that the exceptions are without merit. The Board therefore adopts the Hearing Officer's recommendation as a Decision of the Board."

The appellate court agreed with the city and reversed the State Board's decision. The court believed that the civil service provisions contained in article 10, division 1, of the Municipal Code and adopted by the city were matters "provided for" in other laws, and the court therefore concluded that the city was not required to bargain over the union's proposal that disciplinary matters be resolved by arbitration. Having given broad effect to the accommodation provision in section 7, the appellate court also held that local ordinances are not "laws" within the meaning of that statute. The court was con-

cerned that local units of government might attempt unilaterally to alter or limit the scope of their statutory duty to bargain by passing ordinances on a matter that would otherwise constitute a mandatory subject of bargaining. To prevent that, the appellate court held that local ordinances do not qualify as "other laws" under the accommodation provision of section 7. Apparently the court assumed that the referendum by which the voters of Decatur had adopted the civil service system at issue was itself a law within the meaning of section 7 of the Act.

As a general rule, courts will accord deference to the interpretation placed on a statute by the agency charged with its administration. (*Blum v. Bacon* (1982), 457 U.S. 132, 141, 72 L. Ed. 2d 728, 736, 102 S. Ct. 2355, 2361; *Airey v. Department of Revenue* (1987), 116 Ill. 2d 528, 536; *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152; 5 K. Davis, Administrative Law §29:16 (2d ed. 1984).) An administrative agency's interpretation is not binding, however, and it will be rejected when it is erroneous. *Securities Industry Association v. Board of Governors of the Federal Reserve System* (1984), 468 U.S. 137, 142-43, 82 L. Ed. 2d 107, 113, 104 S. Ct. 2979, 2982; *Northern Trust Co. v. Bernardi* (1987), 115 Ill. 2d 354, 365.

As the appellate court observed, the recommended decision and order, which the State Board later adopted, did not give full effect to the language in section 7 of the Act. (149 Ill. App. 3d at 325.) The interpretation adopted by the State Board in this case suggests that the duty to bargain set out in section 7 invariably overrides any contrary statutory command. That reading of the accommodation provision effectively eliminates any potential conflict between another statute and the bargaining duty prescribed by the Act; under that interpretation, no statute would ever limit the duty to bargain. We do not

agree that section 7 may be read so broadly. Section 7 requires the parties to bargain over mandatory subjects that are "not specifically provided for in any other law or not specifically in violation of the provisions of any law." This indicates that the bargaining duty may in fact be limited by a law that specifically provides for, or prohibits, a matter that would otherwise be a mandatory subject of bargaining. In addition, section 7 provides that if another statute "pertains, in part," to a mandatory subject, the other law does not limit the duty to bargain over clauses that would "supplement, implement, or relate to the effect of such provisions in other laws." Under that provision, statutes that pertain in part to a mandatory subject do not have preemptive effect, and the parties remain obligated to bargain over supplementary clauses. Contrary to the interpretation adopted by the State Board in this case, the accommodation provision in section 7 allows for laws that will limit the duty to bargain. Although we do not agree with the State Board's interpretation of section 7, our examination of the union's proposal in this case and the law that it would affect leads us to conclude, for the reasons set out below, that the State Board correctly ordered the city to bargain over that proposal.

Section 10—1—18 of the Municipal Code provides, in pertinent part:

"Except as hereinafter provided in this section, no officer or employee in the classified civil service of any municipality who is appointed under the rules and after examination, may be removed or discharged, or suspended for a period of more than 30 days, except for cause upon written charges and after an opportunity to be heard in his own defense. Such charges shall be investigated by or before the civil service commission, or by or before some officer or board appointed by the commission to conduct that investigation. *** Nothing in this Division 1 limits the power of any officer to suspend a subordinate for a

reasonable period, not exceeding 30 days except that any employee or officer suspended for more than 5 days or suspended within 6 months after a previous suspension shall be entitled, upon request, to a hearing before the civil service commission concerning the propriety of such suspension." (Ill. Rev. Stat. 1985, ch. 24, par. 10—1—18.)

The parties' previous labor agreement did not attempt to affect the provisions of section 10—1—18 concerning discharges and suspensions, and it expressly left disciplinary suspensions of more than five days, multiple suspensions within a six-month period, and terminations within the exclusive jurisdiction of the municipal civil service commission.

The grievance article in the union's proposed collective-bargaining agreement, at issue here, does not provide an exemption for disciplinary matters. Article V, section 1(a), says:

"A grievance is defined as any difference, complaint or dispute between the Employer and the Union or any employee regarding the application, meaning, or interpretation of this Agreement or arising out of other circumstances or conditions of employment."

The union's proposal would eliminate disciplinary matters involving terminations, suspensions of five days or more, and multiple suspensions within a six-month period from the jurisdiction of the municipal civil service commission and instead would commit all disciplinary questions to final and binding arbitration.

In other jurisdictions, under a variety of statutory and constitutional schemes, courts facing conflicts between public employee bargaining laws and local civil service systems have opted in favor of granting primacy to the bargaining laws. (See *City of Casselberry v. Orange County Police Benevolent Association* (Fla. 1986), 482 So. 2d 336; *Local 1383 of the International Association of Fire Fighters v. City of Warren* (1981), 411 Mich.

642, 311 N.W.2d 702; *AFSCME Council 75, Local 350 v. Clackamas County* (1984), 69 Or. App. 488, 687 P.2d 1102.) Guiding our analysis of our own State's Act is the fundamental principle that the judicial role in construing a statutory provision is to ascertain and give effect to the legislative intent. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 340-41.) "In ascertaining legislative intent, the entire statute must be considered (*People ex rel. Morrison v. Sielaff* (1974), 58 Ill. 2d 91, 93) as well as giving effect to 'the evil to be remedied and the object to be attained' (*People ex rel. Simpson v. Funkhouser* (1944), 385 Ill. 396, 403)." *Chastek v. Anderson* (1981), 83 Ill. 2d 502, 511.

This court has previously noted the broad scope of the Act, with its complex of provisions governing the various aspects of public labor relations. "The Act provides a comprehensive system of collective bargaining for those public employees and employers who fall within its scope." (*County of Kane v. Carlson* (1987), 116 Ill. 2d 186, 196.) We do not believe that the legislature intended to make the broad duties imposed by the Act hostage to the myriad of State statutes and local ordinances pertaining to matters of public employment. The Act provides:

> "It is the public policy of the State of Illinois to grant public employees full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating wages, hours and other conditions of employment or other mutual aid or protection." (Ill. Rev. Stat. 1985, ch. 48, par. 1602.)

To construe the accommodation provision of section 7 narrowly would, we believe, frustrate the declared policy of the State.

As the language of section 7 indicates, the mere existence of a statute on a subject does not, without more, remove that subject from the scope of the bargaining

duty. For example, one type of statute that would not relieve an employer of the duty to bargain over an otherwise mandatory subject of bargaining would be a provision establishing a minimum level of benefit, such as a minimum wage law or minimum salary law. In that case, wages would remain a mandatory subject of bargaining, and the employees' bargaining representative would be free to insist on a level higher—but not lower—than that required by law. (See *Pennsylvania Labor Relations Board v. State College Area School District* (1975), 461 Pa. 494, 509, 337 A.2d 262, 269 (discussing relationship between duty to bargain and accommodation provision in that State's public employee bargaining law); *New Jersey v. State Supervisory Employees Association* (1978), 78 N.J. 54, 80-82, 393 A.2d 233, 246-47 (same).) Thus, in the determination whether the civil service provisions adopted by the city must override the bargaining duty imposed by the Act, it is appropriate to consider the nature of the other law.

Notably, the civil service system provided for in article 10, division 1, of the Municipal Code is an optional scheme and not one imposed by the State on any municipal body. (See Ill. Rev. Stat. 1985, ch. 24, par. 10—1—43.) Moreover, a municipality that has adopted the system may unilaterally alter or amend one of its terms. *Peters v. City of Springfield* (1974), 57 Ill. 2d 142, involved the provision in section 10—1—18 that municipalities "may by ordinance provide an age limit of not less than 63 years as the maximum age for the legal employment of any person employed as a policeman or fireman." (Ill. Rev. Stat. 1971, ch. 24, par. 10—1—18.) In that case the city had passed an ordinance reducing the mandatory retirement age to 60. This court upheld the ordinance as a valid exercise of the municipality's home rule authority (see Ill. Const. 1970, art. VII, §6). Under *Peters*, a home rule city, such as Decatur, that has

adopted the system provided by article 10, division 1, of the Municipal Code is not prohibited from altering its terms. The city could, if it chose to, eliminate those features of the civil service system at issue here.

An additional consideration relevant here is the common role that arbitration plays in resolving labor disputes. The importance of arbitration in private-sector labor relations has long been recognized. (See *United Steelworkers of America v. American Manufacturing Co.* (1960), 363 U.S. 564, 4 L. Ed. 2d 1403, 80 S. Ct. 1343; *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347; *United Steelworkers of America v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358.) With respect to public employees, the legislature has expressed a similar preference for arbitration in section 8 of the Act, which provides:

> "The collective bargaining agreement negotiated between the employer and the exclusive [bargaining] representative shall contain a grievance resolution procedure which shall apply to all employees in the bargaining unit and shall provide for final and binding arbitration of disputes concerning the administration or interpretation of the agreement unless mutually agreed otherwise." (Ill. Rev. Stat. 1985, ch. 48, par. 1608.)

In this case, then, the union's proposal concerns a well-recognized and familiar means for resolving labor disputes.

Given the purpose of the Act, the nature of that part of the civil service system at issue here, and the legislature's express preference for arbitration as a method for resolving disputes during the life of a labor contract, unless mutually agreed otherwise, we conclude that the State Board was correct in ordering the city to bargain over the union's proposal. In these circumstances, we

construe the union's proposal as pertaining to a matter not specifically provided for or in violation of another law, and as supplementing, implementing, or relating to the provisions of the civil service scheme adopted by the city. We do not believe that the legislature would have intended that the civil service system it made available, as an optional matter, to municipalities in the Municipal Code would eliminate the duty to bargain over the union's proposal here. Our ruling does not mean that the city must agree to the union's proposal on this, or any other, subject. The duty to bargain collectively does not require a party to reach a particular agreement or make a particular concession; the parties may pursue their views to impasse. The State Board was correct, however, in directing the city to bargain on the matter. In light of this result, we do not consider here the appellate court's additional holding that a municipal ordinance is not a law within the meaning of section 7 of the Act; the parties to this case have assumed that ordinances are in fact laws within that context.

For the reasons stated, the judgment of the appellate court is reversed.

*Judgment reversed.*