THE VILLAGE OF FRANKLIN PARK, Petitioner-Appellant, v. ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents-Appellees (International Association of Firefighters, Local 1526, Cross-Petitioner and Cross-Appellant; Illinois State Labor Relations Board *et al.*, Cross-Respondents and Cross-Appellees).

First District (4th Division)    No. 1—93—0740

Opinion filed June 23, 1994.—Rehearing denied July 21, 1994.

Robert C. Long and Anthony B. Byergo, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for petitioner.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jerald S. Post, Assistant Attorney General, of counsel), for respondent Illinois State Labor Relations Board.

Richard J. Tupper and J. Dale Berry, both of Cornfield & Feldman, of Chicago, for respondent International Association of Firefighters.

James C. Franczek, Jr., James A. Spizzo, and Pamela B. Hall, all of Vedder, Price, Kaufman & Kammholz, of Chicago, for *amicus curiae* Illinois Public Employer Labor Relations Association.

JUSTICE CAHILL delivered the opinion of the court:

The Village of Franklin Park, Illinois (the Village), and the International Association of Firefighters, Local 1526 (the Union), appeal a decision of the Illinois State Labor Relations Board (the Board). The Village seeks reversal of a part of the Board's order that found the Village committed an unfair labor practice when it refused to bargain over certain Union proposals for promotions to the rank of lieutenant. The Union seeks reversal of a part of the Board's order that found the Village did not commit an unfair labor practice when: it refused to bargain over other Union proposals for promotion to lieutenant; and it refused to bargain over proposals for promotion to

captain; and it refused to produce information about promotions. We affirm.

The Union is the exclusive bargaining agent for firefighters in the Village of Franklin Park, except the chief and captains. The Village has less than 25,000 residents and is not a home rule unit under section 6 of article VII of the Illinois Constitution. (Ill. Const. 1970, art. VII, § 6.) Local governments without home rule authority exercise limited powers under the Constitution and the laws of the State. (Ill. Const. 1970, art. VII, § 7.) A village such as Franklin Park must comply with the Illinois Municipal Code (the Code) (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—1 *et seq.*). The president of the Village appoints members to the Board of Fire and Police Commissioners (the BFPC). The BFPC gives entrance and promotion exams and sets promotion criteria for firefighters under rules and regulations adopted by the BFPC and approved by the Village trustees. Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—5.

The Village and the Union began negotiations in February 1990 on a bargaining agreement for the years 1990 through 1992. The Union submitted a proposal for promotions. The parts of the proposal under review read:

"A. *** Eligibility for promotion to the positions of Lieutenant and Captains shall be based on:

1. Written Examination ....................60%
2. Oral Examination ........................10%
3. Merit and Efficiency......................10%
4. Seniority (2% per year max. 10 years)....20%
   TOTAL                                   100%

* * *

B. The Oral Examination shall be given by a mutually agreed panel from an outside source. Questions shall be in keeping with knowledge and requirements for the rank considered and coincide with the guidelines set in Appendix D.

C. The Written Examination shall be given by a reputable testing agency which is mutually agreed upon.

D. The Merit and Efficiency ratings shall also coincide with the guidelines in Appendix D.

E. Promotions shall be made in rank order from the top of the promotion standing list.

F. All scores from each section of the testing process shall be posted.

G. Requirements for Promotional Exams shall be as follows:

Lieutenants: Firefighters must be working Five (5) years in grade and must carry a Firefighter 3 status.

Captains: Lieutenants must be working Two (2) years in grade and must carry a Fire Officer 1 rating.

Once a Firefighter has been promoted to Lieutenant, he/she must obtain a Fire Officer 1 rating to reach maximum salary.

\* \* \*

APPENDIX D

1. All rating factors should be related to performance factors important to carrying out the major duties of the promotional rank.

2. Rating factors should be weighted in accordance with their relative importance in the primary duties of the promotional rank, recognizing that a Captain or Lieutenant is expected to serve as the leader of a fire company.

3. The rating system should stress objectivity and seek to minimize the interjection of subjective considerations unrelated to performance.

4. The rating system should include the input of Firefighters who have worked with the candidate as a member of the fire company.

5. The rating system should include an advocacy forum that will allow a candidate's company officer the opportunity to personally appear before any higher level of rating authority and orally justify his rating prior to any final rating being set by such authority.

6. The authority assigning the final rating should be able to account for its rating by providing reasons or examples of performance to support its conclusions.

7. Due deference should be accorded to the advice and recommendations of outside consultants who may be retained by the City or the Union to provide expert guidance in the designing and implementation of a professionally developed performance and promotional evaluation system."

The Village refused to bargain over these proposals. The Union also asked for the section scores of firefighters who took the most recent exam and for the formulas used to calculate the merit efficiency and oral scores. The Village refused to furnish this information. The Union then filed a charge with the Board alleging the Village violated section 10(a) of the Illinois Public Labor Relations Act (the Act) (Ill. Rev. Stat. 1989, ch. 48, par. 1610(a)).

The executive director of the Board filed a complaint with the Board, a hearing was held on April 30, 1991, and the hearing officer then issued a recommended decision and order. The Village and the Union filed exceptions to this decision and filed supplemental briefs with the Board.

On August 13, 1992, the Board found the mandatory subjects of bargaining to be: (1) criteria for promotions; (2) weighting criteria; (3) minimum eligibility requirements to participate in exams; and (4) order of promotion from the final eligibility list; and (5) posting exam scores. The Board found the following not to be mandatory subjects: (1) exam format and design; (2) identity of those who conduct the oral and written parts of the exam; (3) standards and guidelines for exam questions; and (4) standards and guidelines for the merit and efficiency rating. The Board also found that the proposal for promotion to captain was not a mandatory subject of bargaining and that the Village was not required to give the Union information about subjects the Board found were not mandatory subjects of bargaining.

On September 11, 1992, the Village filed a petition for administrative review under section 11 of the Act and Supreme Court Rule 335. (Ill. Rev. Stat. 1991, ch. 48, par. 1611(e); 134 Ill. 2d R. 335.) The Union filed a cross-petition.

We will reverse agency findings of fact on review only if they are against the manifest weight of the evidence and it is clearly evident that the agency should have reached the opposite conclusion. (*Village of Downers Grove v. Illinois State Labor Relations Board* (1991), 221 Ill. App. 3d 47, 53, 581 N.E.2d 824, 828.) We give substantial weight and defer to an agency interpretation of the statute it enforces. (*Central City Education Association v. Illinois Educational Labor Relations Board* (1992), 149 Ill. 2d 496, 510, 599 N.E.2d 892, 898, citing *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 153, 447 N.E.2d 295, 300 ("[C]ourts appreciate that agencies can make informed judgments upon the issues, based upon their experience and expertise").) The record fails to support either the Village or the Union contentions that the decision of the Board is against the manifest weight of the evidence.

A public employer violates section 10(a)(4) of the Act if it refuses to "bargain collectively in good faith with a labor organization which is the exclusive representative of public employees in an appropriate unit." (Ill. Rev. Stat. 1989, ch. 48, par. 1610(a)(4).) Section 7 of the Act defines a "duty to bargain collectively" to include a duty "to negotiate in good faith with respect to wages, hours, and other conditions of employment, not excluded by Section 4 of this Act." (Ill. Rev. Stat. 1989, ch. 48, par. 1607.) Section 4 states:

> "Employers shall not be required to bargain over matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer, standards of services, its overall budget, the organizational structure and selection of new employees, examination techniques and direction

of employees. Employers, however, shall be required to bargain collectively with regard to policy matters directly affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by employee representatives." Ill. Rev. Stat. 1989, ch. 48, par. 1604.

●1 The Board uses a balancing test to define the scope of bargaining over issues which concern wages, hours or terms and conditions of employment, but also implicate managerial policy. (See *American Federation of State, County & Municipal Employees v. Illinois State Labor Relations Board* (1989), 190 Ill. App. 3d 259, 546 N.E.2d 687.) In *Central City*, 149 Ill. 2d 496, 599 N.E.2d 892, the court held that a three-part balancing test is the best method to determine if an issue is a mandatory subject of bargaining. The opinion addressed the "employer rights" provision of the Illinois Educational Labor Relations Act (the IELRA) (Ill. Rev. Stat. 1987, ch. 48, par. 1704). The language of the IELRA is similar to the language of the Act we address. The court in *Central City* set out the three-part test:

"The first part of the test requires a determination of whether the matter is one of wages, hours and terms and conditions of employment. This is a question that the IELRB is uniquely qualified to answer, given its experience and understanding of bargaining in education labor relations. ***

If the answer to the first question is yes, then the second question is asked: Is the matter also one of inherent managerial authority? *** If the answer is yes, then the hybrid situation discussed in section 4 exists: the matter is within the inherent managerial authority of the employer and it also affects wages, hours and terms and conditions of employment.

At this point in the analysis, the IELRB should balance the benefits that bargaining will have on the decisionmaking [*sic*] process with the burdens that bargaining imposes on the employer's authority. Which issues are mandatory, and which are not, will be very fact-specific questions, which the IELRB is eminently qualified to resolve." *Central City*, 149 Ill. 2d at 523, 599 N.E.2d at 905.

●2 The Board here applied the balancing test approved in *Central City* and found that several promotion proposals were mandatory subjects of bargaining, while others were not. The Board found that the proposals for promotion to the rank of lieutenant concerned "wages, hours and terms and conditions of employment." It stated, "promotional standards *** are a term or condition of employment, because they could very well determine which promotional candidate obtains the improved wages and conditions of employment that result from a promotion." The Village argues that the Board incorrectly

found that criteria and procedures for promotion to lieutenant were terms and conditions of employment. The Village suggests that to pass the first test, the issue must *be* one of wages, hours or terms and conditions of employment, rather than *affect* them. The court in *Central City* used the words "whether the matter *is one of* wages, hours and terms and conditions of employment." (Emphasis added.) (*Central City*, 149 Ill. 2d at 523, 599 N.E.2d at 905.) We do not interpret this language in *Central City* to preclude matters that *affect* wages, hours or terms and conditions of employment. The statutory language the court interpreted states, "[e]mployers *** shall be required to bargain collectively with regard to policy matters directly *affecting* wages, hours and terms and conditions of employment." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 48, par. 1704.

The Board moved to the second part of the test and found that promotion criteria and procedures involved inherent managerial authority. The Village does not challenge this finding, but argues that some of the proposals involve exam techniques which makes them "*per se* exempt from mandatory bargaining" under section 4 of the Act. The Village correctly points out that unlike section 4 of the IELRA construed in *Central City*, section 4 of the Act before us includes exam techniques within the list of matters included among inherent managerial rights. (Ill. Rev. Stat. 1989, ch. 48, par. 1604.) But, identifying a matter as one of "inherent managerial policy" does not preclude the duty to bargain. The court in *Central City* held that where, as here, a matter is one of wages, hours or terms and conditions of employment and inherent managerial policy, the Board must balance the benefits and the burdens of bargaining. *Central City*, 149 Ill. 2d at 523, 599 N.E.2d at 905.

The Board next balanced the benefits and burdens of proposal 1A, which proposes percentages to be used in weighting the four parts of the exam. It found weighting the written, oral, merit and efficiency, and seniority parts of the exam relates directly to a firefighter's chance of promotion and the benefits of promotion. It also noted that firefighters have a strong interest in career advancement and that bargaining over promotion criteria does not impair the Village's right to establish and manage government policy. It found that including "examination techniques" in section 4 of the Act suggests a legislative intent to preserve an employer's freedom to establish procedural or mechanical aspects of exam administration, but that bargaining over promotion criteria and their weight does not impair the Village's right to determine exam techniques.

We disagree with the argument made by the Village that the Board "misapplie[d] such a balancing approach and confuse[d] the

notions of decisional bargaining and impact bargaining." The Board weighed the benefit to firefighters and the burden on the employer and supported its conclusions with factual analysis. Its decision is not against the manifest weight of the evidence.

●3 The Board next reviewed proposal 1B, that the parties bargain over who administers the oral exam; proposal 1C, that the parties bargain over who administers the written exam; and proposal 1D, that merit and efficiency rating coincide with guidelines set out in appendix D; and found they related more to test methods than substance. The Board found that test methods have an indirect and uncertain impact on chances for promotion, while employer policies are directly related to its right to establish exam techniques, a matter the legislature found to be one of inherent managerial policy. The Union argues that the Board erred here because it did not balance the benefits that bargaining will have on decision making with the burdens imposed on employer authority. We disagree. The Board balanced the benefits and the burdens when it stated "the additional benefit that would accrue to employees by requiring the Village to bargain about how promotional examinations are designed, administered and graded is outweighed by the significant burden it would place on the Village's authority to formulate and establish examination techniques."

●4 The Board next found proposal 1E, that promotions be made in rank order, and 1G, that employees meet minimum time-in-rank requirements, to be mandatory subjects of bargaining. It found these proposals directly affected a firefighter's chance for promotion, while also finding that they were not exam techniques because they did not involve test methods or administration of the exam. The Board noted and we agree that the Village failed to show a need for unilateral decision making here.

The Board found that proposal 1F—posting exam scores—was a mandatory subject of bargaining. It found the firefighters' strong interest in the fairness and neutrality of the promotion system outweighed the burdens. The Village fails to offer evidence that this decision is against the manifest weight of the evidence.

●5 The Board next found that the Village did not commit an unfair labor practice when it refused to give the Union information it asked for while bargaining. The Board noted that the Union asked for information to prepare itself to bargain over scoring the merit and efficiency parts of the exam. Since the Board found this subject was not mandatory, it concluded the Act did not require the Village to produce information on a nonmandatory subject. We agree. An employer need not supply information on a nonbargainable subject.

*Litton Microwave Cooking Products Division, Litton Systems, Inc. v. National Labor Relations Board* (6th Cir. 1989), 868 F.2d 854, 858-59.

In addition, the Board found that the proposal for promotion to captain was not a mandatory subject of bargaining. The Board stated that "the wages and job responsibilities of individuals whom the Union does not represent is simply not a matter within the scope of the Union's representation." The Board found that "promotions to positions outside of the bargaining unit are not a mandatory subject of bargaining because they do not directly affect the terms and conditions of employment of unit employees."

The Union argues that promotion criteria for captains are terms and conditions of employment because they provide incentives for those within the bargaining unit and affect safety concerns. The Union also argues that it has an interest in bargaining over the promotion to captain because captains must be chosen from the bargaining unit rank of lieutenant. That the Union has such an interest may be so. But the Union's path of reasoning, followed to its logical end, would force an employer to bargain over the appointment of all supervisory personnel who may rise through the ranks, including the chief.

●6 That captains are not members of the bargaining unit controls analysis of the argument. Section 10(a)(4) of the Act requires employers "to bargain collectively in good faith with a labor organization which is the *exclusive representative* of public employees in an appropriate unit." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 48, par. 1610(a).) The Union does not represent captains. The statute does not impose a duty on the Village to bargain over promotion criteria for employees outside the scope of the bargaining unit.

Finally, the Village, in an argument that selectively cross-references the Act and the Municipal Code, suggests that the proposals the Board found to be mandatory are illegal subjects of bargaining. While the Union would capture captains for the bargaining unit, the Village would reduce bargaining matters to a sparse handful. The legislative scheme for collective bargaining and the balancing test set out in *Central City*, and adhered to by the Board, are designed to fix a prudent middle ground.

The Village argument begins with the accommodation provision of section 7 of the Act. That provision excludes from the duty to bargain matters with respect to wages, hours and other conditions of employment "specifically provided for in any other law or *** specifically in violation of the provisions of any law." (Ill. Rev. Stat. 1989, ch. 48, par. 1607.) The Village argues that proposals 1A, 1E, 1F, and 1G violate another law, section 10—2.1—15 of the Illinois Munic-

ipal Code, which applies to municipal police and fire departments. Section 10—2.1—15 of that Code states:

"The [BFPC], by its rules, shall provide for promotion in the fire and police departments on the basis of ascertained merit and seniority in service and examination, and shall provide in all cases, where it is practicable, that vacancies shall be filled by promotion. All examinations for promotion shall be competitive among such members of the next lower rank as desire to submit themselves to examination. All promotions shall be made from the 3 having the highest rating \*\*\* [t]he method of examination and the rules governing examinations for promotion shall be the same as provided for applicants for original appointment \*\*\*." Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—15.

The Village suggests that Union proposals 1A, weighting promotion criteria; 1E, limiting promotion to the top candidate; 1F, requiring posting of the exam; and 1G, setting preconditions for the exam, go beyond or conflict with the Code:-But section 7 of the Act also provides:

"If any other law pertains, in part, to a matter affecting the wages, hours and other conditions of employment, such other law shall not be construed as limiting the duty 'to bargain collectively' and to enter into collective bargaining agreements containing clauses which either supplement, implement, or relate to the effect of such provisions in other laws." Ill. Rev. Stat. 1989, ch. 48, par. 1607.

Finally, the Illinois Supreme Court in *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 522 N.E.2d 1219, construed the accommodation provision of section 7 of the Act and stated:

"We do not believe that the legislature intended to make the broad duties imposed by the Act hostage to the myriad of State statutes and local ordinances pertaining to matters of public employment. \*\*\* To construe the accommodation provision of section 7 narrowly would, we believe, frustrate the declared policy of the State." *City of Decatur*, 122 Ill. 2d at 364, 522 N.E.2d at 1224.

●7 We apply the reasoning of the court in *City of Decatur* and find that section 7 should not be construed narrowly here and that proposals 1A, 1E, 1F, and 1G do not conflict with section 10—2.1—15 of the Municipal Code. As the Board noted, proposal 1A is consistent with the Code requirement that promotions be based on three factors: ascertained merit, seniority, and an exam. The Code is silent on the weight to be given those criteria, and so we find that the proposal supplements the provisions of the Code.

Proposal 1E, which proposes that the highest ranking candidate be promoted, is more precise than the requirement of the Code that promotions be made from the three candidates with the highest rating. The Board reasoned "the statutory mandate is satisfied as long as one of the three highest ranking candidates is selected." We agree.

The posting proposal of proposal 1F is not inconsistent with the Code. Section 10—2.1—15 neither requires nor prohibits posting of scores, and so we find that the proposal supplements the provisions of the Code.

Proposal 1G states that firefighters and lieutenants must meet certain time-in-grade and certification requirements to be eligible to take the exam. Section 10—2.1—15 mandates that exams "shall be competitive among such members of the next lower rank as desire to submit themselves to examination." (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—15.) The Union proposal is more restrictive, but it does not conflict with the Code. All firefighters are "members of the next lower rank," as required by the Code.

Affirmed and enforced.

HOFFMAN, P.J., and JOHNSON, J., concur.