NOTICE: Under Supreme Court Rule 367 a party has 21 days after

the filing of the opinion to request a rehearing. Also, opinions

are subject to modification, correction or withdrawal at anytime

prior to issuance of the mandate by the Clerk of the Court.

Therefore, because the following slip opinion is being made

available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The

official copy of the following opinion will be published by the

Supreme Court's Reporter of Decisions in the Official Reports

advance sheets following final action by the Court.

                                    

                Docket No. 80712--Agenda 7--January 1997.

     STEPHEN L. DENTON, Appellee, v. THE CIVIL SERVICE COMMISSION OF

                THE STATE OF ILLINOIS et al., Appellants.

                      Opinion filed April 24, 1997.

     CHIEF JUSTICE HEIPLE delivered the opinion of the court:

     The issue before this court is whether section 8b.7(f) of the

Personnel Code (20 ILCS 415/8b.7(f) (West 1992)) affords veterans

an absolute hiring preference over nonveterans within the same

grade category. The Civil Service Commission (the Commission) and

the circuit court determined that section 8b.7(f)'s hiring

preference was not absolute. The appellate court disagreed, holding

that section 8b.7(f) does indeed grant veterans an absolute hiring

preference over nonveterans of the same grade category. 277 Ill.

App. 3d 770. This court granted leave to appeal (155 Ill. 2d R.

315), and, for the reasons which follow, we affirm the appellate

court.

     Appellee, Stephen L. Denton, served in the United States Army

from December 1965 until he was honorably discharged in December

1968. On June 12, 1991, Denton submitted an application to the

Illinois Department of Central Management Services (CMS), seeking

employment for an open "Executive IV" position. Denton indicated on

the application that he was eligible for a veteran's preference. On

July 10, 1991, Denton received notice from CMS that his application

had been graded and that he had been given a category grade of "A,"

the highest grade possible. Denton was also notified that his name

and grade had been placed on a CMS eligibility list requested by

the Illinois State Police.

     On August 27, 1991, Denton joined 13 veterans and three

nonveterans who interviewed for the Executive IV position of

assistant bureau chief in the Drug Abuse Resistance Education

(D.A.R.E.) program. With the approval of CMS, however, the State

Police hired a nonveteran, namely, Linda Lang. Lang, like Denton,

had also been given a category grade of "A." After receiving a

letter from the State Police informing him that he had not been

chosen, Denton wrote to the Commission contending that the failure

to hire him violated section 302.30(c)(3) of Title 80 of the

Administrative Code. This section provides that "[i]f category

ratings are used, the veteran eligibles in each category shall be

preferred for appointment before the nonveteran eligibles in the

same category." 80 Ill. Adm. Code §302.30(c)(3) (1990) (identical

language now at 80 Ill. Adm. Code §302.30(d) (1996)). The

Commission staff responded by letter that Lang's overall

credentials were superior to those of all the other candidates. The

Commission staff's letter further explained that section

302.30(c)(3) of the personnel rules had been interpreted to permit

an agency to bypass a veteran only when the qualifications of the

nonveteran eligible were superior to the bypassed veteran

eligibles. Having thus found no violation of the personnel rules or

the Personnel Code, the Commission staff notified Denton that if

adopted by the Commission, the staff's determination would became

a final administrative decision.

     Denton thereafter asserted by letter that section 8b.7 of the

Personnel Code had been violated when he or another qualified

veteran was not appointed to the Executive IV position with the

State Police. See Ill. Rev. Stat. 1991, ch. 127, par. 63b108b.7

(codified as 20 ILCS 415/8b.7 (West 1992)). Nevertheless, the

Commission rendered a final administrative decision by adopting its

staff's findings on May 13, 1992.

     Denton subsequently filed a complaint for administrative

review in the circuit court of Sangamon County on June 17, 1992,

against the Commission, including Executive Secretary Bruce J.

Finne and Commissioners J.J. Moffat, William G. Stratton, and Harry

Conlon; the State Police, including Director Terrance W. Gainer;

and CMS, including Director Stephen B. Schnorf. The circuit court

affirmed, holding that a veteran may be bypassed for employment in

favor of a more qualified nonveteran. Denton appealed. The

appellate court reversed, holding that section 8b.7(f) of the

Personnel Code grants veterans an absolute hiring preference over

nonveterans within the same grade category. 277 Ill. App. 3d 770.

                                 ANALYSIS

     The sole issue on appeal is whether section 8b.7(f) of the

Personnel Code guarantees veterans an absolute hiring preference

over nonveterans of the same grade category. Section 8b.7(f)

provides:

               "The rank order of persons entitled to a preference

          on eligible lists shall be determined on the basis of

          their augmented ratings. When the Director [of CMS]

          establishes eligible lists on the basis of category

          ratings such as `superior[,]' `excellent[,]' `well-

          qualified[,]' and `qualified[,]' the veteran eligibles in

          each such category shall be preferred for appointment

          before the non-veteran eligibles in the same category."

          (Emphasis added.) 20 ILCS 415/8b.7(f) (West 1992).

The Commission contends that the above-emphasized portion of

section 8b.7(f) provides an absolute hiring preference only in

situations where the veteran and nonveteran of the same grade

category are equally qualified. Denton counters that the emphasized

portion of section 8b.7(f) unambiguously mandates an absolute

hiring preference for veterans in the same grade category as

nonveterans.

     While courts afford considerable deference to an agency's

interpretation of a statute it administers, an agency's

determination is not binding as to questions of law and will be

rejected if erroneous. City of Decatur v. American Federation of

State, County, & Municipal Employees, Local 268, 122 Ill. 2d 353,

361 (1988). Indeed, the primary rule in statutory construction is

to give effect to legislative intent as evidenced by the language

of the statute. Solich v. George & Anna Portes Cancer Prevention

Center of Chicago, Inc., 158 Ill. 2d 76, 81 (1994). Words in the

statute should be given their popularly understood meaning (Kozak

v. Retirement Board of the Firemen's Annuity & Benefit Fund, 95

Ill. 2d 211, 215 (1983)), and only where the statutory language is

unclear may a court look beyond it (Solich, 158 Ill. 2d at 81).

     As well as contending that the language of section 8b.7(f)

does not provide veterans with a absolute hiring preference over

more qualified nonveterans in the same grade category, the

Commission further argues that the emphasized portion of section

8b.7(f) is satisfied by procedures CMS has developed to favor

veterans over nonveterans in the hiring process. These CMS

procedures require that the employing agency interview and consider

veterans of a given category before nonveterans of the same

category; that the employing agency request CMS approval before

selecting a nonveteran over available veterans; and that veterans,

upon request, receive a written explanation of the reasons why

another candidate was selected. The Commission argues that these

procedures satisfy section 8b.7(f) in that they reflect a

reasonable interpretation of the veteran's preference provision.

     The appellate court held that CMS's failure to record these

procedures in the administrative code renders them invalid. See 5

ILCS 100/1--70 (West 1992); Senn Park Nursing Center v. Miller, 104

Ill. 2d 169, 181 (1984) (holding that when an agency fails to

follow the proper procedure under the Illinois Administrative

Procedure Act for the adoption of rules, the rule is invalid). Our

interpretation of section 8b.7(f), however, obviates the need to

reach this issue.

     While all the parties concede that the CMS procedures grant

veterans preferential treatment in the hiring process, the relevant

question is whether these procedures, even if valid, satisfy

section 8b.7(f), which requires that the "veteran eligibles in each

such category shall be preferred for appointment before the non-

veteran eligibles in the same category." The term "preferred" means

"[p]ossessing or accorded a priority, advantage, or privilege."

Black's Law Dictionary 1178 (6th ed. 1990). Admittedly,

interviewing and considering veterans before nonveterans and

permitting veterans to question an agency's decision to hire a

nonveteran over veterans grant veterans an advantage. But an

advantage is not what section 8b.7(f) calls for; rather, it

mandates appointment.

     Because there is no value in a "prefer[ence] for appointment"

that does not result in appointment, we conclude that the

unambiguous language of the statute requires that veterans receive

an absolute preference in being hired over nonveterans of the same

grade category. In other words, when the Director of CMS chooses to

organize eligibility lists on the basis of category ratings, a

veteran must receive an offer for the job before nonveterans of the

same grade category. Accordingly, to the extent that the CMS hiring

procedures do not afford an absolute hiring preference as mandated

by section 8b.7(f), they are insufficient.

     The Commission argues that so interpreting section 8b.7(f)

improperly diminishes the employing agency's role in the selection

process and further undermines the merit principles upon which the

Personnel Code is based. In support of this argument, the

Commission points out that Denton's "A" grade indicated only that

he met the minimum qualifications for Executive IV positions and

not that he was as qualified as Lang for the D.A.R.E. position.

     It is, however, for the legislature to decide whether and to

what extent state agencies should be constrained in their

employment decisions. Indeed, the Personnel Code requires CMS, not

the employing agency, to establish a position classification plan

for all positions governed by the Personnel Code (20 ILCS 415/8a

(West 1994)); to eliminate those who are not qualified for entrance

into state service and to discover the relative fitness of those

who are qualified (20 ILCS 415/8b.1 (West 1992)); and to establish

lists of names of candidates in order of their relative excellence

in respective examinations (20 ILCS 415/8b.3 (West 1992)). The

Personnel Code further provides that CMS may substitute categories

for numerical ratings and establish lists of candidates

accordingly. 20 ILCS 415/8b.3 (West 1992). If CMS uses numerical

lists, the employing agencies may consider for appointment the

three highest applicants on the list. 20 ILCS 415/8b.5 (West 1992).

If, as in the instant case, CMS uses categories rather than

numerical lists, the employing agency must prefer for appointment

the veterans over the nonveterans of the same category. 20 ILCS

415/8b.7(f) (West 1992). This is what the Personnel Code requires,

and we are duty bound to enforce it.

     The Commission additionally argues that granting veterans an

absolute hiring preference over nonveterans of the same grade

category renders sections 8b.3 and 8b.5 meaningless in certain

situations. As noted above, section 8b.3 authorizes CMS to

establish eligible lists of candidates and to provide these lists

to the employing agencies. The Commission argues that if only one

veteran were placed in the "A" category, an eligible list would be

redundant because the veteran's selection would be automatic.

Perhaps the Commission is correct in that a list of candidates

would be unnecessary in such a situation, but we fail to see how

this renders the statute meaningless.

     Section 8b.5 provides:

               "For the appointment of the person standing among

          the 3 highest on the appropriate eligible list to fill a

          vacancy, or from the highest ranking group if the list is

          by rankings instead of numerical ratings, except as

          otherwise provided in Sections 4b and 17a of this Act.

               The Director may approve the appointment of a person

          from the next lower ranking group when the highest

          ranking group contains less than 3 eligibles." 20 ILCS

          415/8b.5 (West 1992).

The Commission argues that this court's interpretation of section

8b.7(f) renders section 8b.5 meaningless because if the only

candidate in the "A" category is a veteran, the veteran would be

guaranteed the job and there would not be a third or even a second

candidate for the agency to consider. Moreover, the Commission

contends that if the legislature intended to exclude section

8b.7(f) from the three-candidate provision of section 8b.5 it would

have included section 8b.7(f) among the specifically designated

exceptions to section 8b.5. We observe, however, that section 8b.5

does not mandate that an agency have at least three candidates to

choose from, but merely provides that CMS may approve the

appointment of a person from the next lower ranking group when less

than three candidates are available. CMS is not compelled to do so,

however, and we therefore conclude that our interpretation of

section 8b.7(f) is wholly compatible with section 8b.5.

     The Commission next observes that veterans are not guaranteed

an absolute hiring preference over nonveterans when candidates are

ranked in numerical order. Indeed, section 8b.5 permits a hiring

agency to consider for appointment any one of the three highest

numerically ranked candidates. The Commission argues that it is

illogical to suggest that the legislature intended a different

result simply because CMS chooses to rank candidates by category

instead of numerically. This court, however, will not pass on the

wisdom of the legislature's handiwork. Our duty is to interpret

section 8b.7(f) according to its plain and unambiguous language. We

thus enforce section 8b.7(f) according to its unambiguous mandate

that when categories are used veterans shall receive an absolute

hiring preference over nonveterans in the same category.

                                CONCLUSION

     Whether and to what extent veterans preferences should be

granted are matters for legislative determination. Hiring

preferences for veterans have traditionally been adopted to reward

veterans for the sacrifice of military service, to ease the

transition from military to civilian life, to encourage patriotic

service, and to attract loyal and well-disciplined people to civil

service occupations. Personnel Administrator v. Feeney, 442 U.S.

256, 265, 60 L. Ed. 2d 870, 879, 99 S. Ct. 2282, 2289 (1979);

People ex rel. Jendrick v. Allman, 396 Ill. 35, 38, 39 (1947);

People ex rel. Sellers v. Brady, 262 Ill. 578, 594 (1914).

     For the reasons stated above, we determine that section

8b.7(f) of the Personnel Code (20 ILCS 415/8b.7(f) (West 1992))

provides veterans an absolute hiring preference over nonveterans

within the same grade category. Accordingly, we affirm the

appellate court's judgment reversing and remanding this cause to

the circuit court of Sangamon County.

Affirmed.

                                                                         

     JUSTICE MILLER, dissenting:

     I do not agree with the majority's conclusion that the

veterans preference provision of the Personnel Code accords

veterans an absolute preference over nonveterans receiving the same

ranking, even when the nonveteran is more qualified for the

position in question. The majority's interpretation is not required

by the language of the statute, is inconsistent with the practice

followed by the agency responsible for carrying out the statute,

and conflicts with the requirements of other statutory provisions.

For those reasons, I respectfully dissent.

     The veterans preference provision at issue is found in section

8b.7(f) of the Personnel Code, which states:

               "The rank order of persons entitled to a preference

          on eligible lists shall be determined on the basis of

          their augmented ratings. When the Director [of Central

          Management Services] establishes eligible lists on the

          basis of category ratings such as `superior',

          `excellent', `well-qualified', and `qualified', the

          veteran eligibles in each such category shall be

          preferred for appointment before the non-veteran

          eligibles in the same category." 20 ILCS 415/8b.7(f)

          (West 1992).

Declaring that "there is no value in a `prefer[ence] for

appointment' that does not result in appointment," the majority

concludes that section 8b.7(f) unambiguously requires that a

veteran be hired before a nonveteran when the two are assigned the

same grade by the Department of Central Management Services (CMS).

Slip op. at 5. The applicants in the present case were graded on a

descending scale of A, B, and C; both the plaintiff, Stephen

Denton, and the person ultimately hired for the position at issue,

Linda Lang, received grades of A. Under the majority's

interpretation of section 8b.7(f), a veteran such as Denton who

receives a grade of A must be hired instead of a nonveteran

receiving the same grade, even when the veteran is less qualified

for the job in question.

     I disagree with the majority's conclusion that the statutory

language is unambiguous, and with the majority's determination that

the preference expressed in the statute can be effectuated only by

requiring the hiring of veterans rather than nonveterans merely on

the basis of the veterans' category ranking. The statute says

simply that veterans "shall be preferred for appointment" before

nonveterans, without describing the nature or strength of the

preference. It is not clear from the statutory language whether the

preference is absolute in all instances, or whether it may instead

be overcome in some cases, as when a nonveteran possesses better

qualifications. I agree with the defendant agencies that the

provision affords a veteran an absolute preference in hiring over

a nonveteran in the same category only when the two candidates are

equally well qualified. In addition, I note that other measures

prescribed by CMS for agencies in conducting interviews and in

making hiring decisions give further effect to the statutory

preference. In my view, the agencies' interpretation fulfills the

purposes of the statutory preference, as well as those of the

Personnel Code, of which the preference is a part.

     Notably, other provisions of the Personnel Code cannot be

reconciled with the absolute preference the majority finds in the

language of section 8b.7(f). For example, section 8b.5 of the

Personnel Code provides "[f]or the appointment of the person

standing among the 3 highest on the appropriate eligible list to

fill a vacancy, or from the highest ranking group if the list is by

rankings instead of numerical ratings, except as otherwise provided

in Sections 4b and 17a of this Act." 20 ILCS 415/8b.5 (West 1992).

The only two exceptions stated in that section pertain to persons

whose positions were not initially covered by the Personnel Code

and to persons appointed to certain trainee programs; if the

legislature had intended for the veterans preference to operate in

the absolute manner found by the majority, then section 8b.5 would

cite the preference statute as an additional exception to the

proviso allowing the hiring agency to make its selection from among

the top three candidates.

     The majority's interpretation also ignores the distinct roles

played by CMS and the hiring agencies in employment decisions. The

grades assigned by CMS refer only to the general qualifications of

the applicants for the position classification in question. In this

case, the applicants were applying for an executive IV position,

and both received grades of A. In assigning those grades to the

applicants, however, CMS was examining only the general

requirements of executive IV positions and the overall

qualifications of the applicants, and was not considering the

particular requirements of the post being filled by the Department

of State Police or the more specialized qualifications possessed by

the individual applicants. Two candidates might receive the same

grade, reflecting their general qualifications for an executive IV

position, yet they might not be equally well qualified for the

specific position being filled by the hiring agency. CMS grades

persons only on the basis of general characteristics required for

a certain job classification. Under the majority's interpretation,

however, an applicant's status as a veteran can become the sole

determinant in hiring, once CMS places the veteran in the highest

category. The majority's construction will prevent the more

searching scrutiny previously undertaken by hiring agencies of an

applicant's qualifications for a particular job.

     As the defendants point out, CMS has adopted a number of

measures that are designed to carry out the preference afforded by

section 8b.7(f). Under guidelines adopted by CMS, agencies are

instructed to consider and interview veterans first when both

veterans and nonveterans appear on a list of eligible candidates.

A nonveteran may be hired over a veteran only when the interviewing

officer believes that "the prior educational training, past work

experience and/or job related personal attributes of the nonveteran

eligible presents evidence that he or she will perform the duties

and functions of the vacant position in a manner superior to any of

the by-passed veteran eligibles." A veteran who is not selected for

a position may obtain a written explanation of the reasons for the

hiring decision. In addition, CMS must give advance approval of an

agency's request to hire a nonveteran over a veteran in the same

category ranking. "As a general rule, courts will accord deference

to the interpretation placed on a statute by the agency charged

with its administration." City of Decatur v. American Federation of

State, County, & Municipal Employees, Local 268, 122 Ill. 2d 353,

361 (1988); see also Smiley v. Citibank (South Dakota), N.A., 517

U.S. ___, ___, 135 L. Ed. 2d 25, 30, 116 S. Ct. 1730, 1733 (1996)

("It is our practice to defer to the reasonable judgments of

agencies with regard to the meaning of ambiguous terms in statutes

that they are charged with administering"). The interpretation

expressed in the CMS guidelines, and offered here by the

defendants, is a reasonable one, and it has the substantial merit

of giving effect to the language of the statute without trenching

on related provisions of the Personnel Code.

     In the proceedings below, the appellate court questioned the

validity of these administrative guidelines because they had not

been promulgated through the formal rulemaking process set forth in

the Illinois Administrative Procedure Act (5 ILCS 100/5--5 through

5--155 (West 1992)). The majority finds it unnecessary to resolve

this issue, given the decision here to enforce section 8b.7(f) in

a manner contrary to the guidelines. I do not believe that it was

necessary for CMS to follow formal rulemaking procedures in

establishing these standards. Because the CMS guidelines involve

"agency management or personnel practices," there was no need under

the Administrative Procedure Act for the department to promulgate

the guidelines as administrative rules. See 5 ILCS 100/5--35(c)

(West 1992).

     Giving veterans an absolute preference over nonveterans in all

instances, as the majority does, conflicts with the underlying

purposes of the civil service laws, and we should look for a more

definite statement of intent by the legislature before ascribing to

the statutory language at issue here the meaning adopted by the

majority. The Personnel Code is "based on merit principles and

scientific methods" (20 ILCS 415/2 (West 1992)), and, as this case

illustrates, sometimes only the selection of a nonveteran over a

veteran is consistent with that foundation. The position for which

the plaintiff applied was that of Assistant Bureau Chief in the

Drug Abuse Resistance Education (DARE) Bureau, of the Illinois

State Police. This executive IV post required, at a minimum, four

years of college education, preferably with an emphasis on business

or public administration, and four years of administrative

experience in a public or business organization. The job

description said that the person would be responsible for all DARE

training, field coordination, and curriculum development. A strong

background in education was said to be essential.

     The plaintiff, Stephen Denton, had a master's degree in labor

relations and human resources administration from Sangamon State

University. He had worked more than five years as an auditor with

the Illinois Department of Public Aid, nine years as a labor union

representative, and more than one year as executive director of an

organization called the Veterans Protective League. The Department

interviewed Denton for the position at issue but ultimately hired

Linda Lang, a nonveteran. Lang had a master's degree in educational

administration from Southern Illinois University and a bachelor's

degree in history and political science from Millikin University.

She had been a teacher and a school principal. At the time Lang

applied for this position, she was employed by the Department of

State Police as an educational consultant to the DARE program. In

that post, Lang supervised curriculum development, among other

things, and she had been involved in the training of more than

1,800 DARE officers. Lang also served on a federal DARE regional

advisory board, and she had received state and national awards for

her DARE-related work. Lang was the better-qualified candidate,

given her background and experience. I do not believe that the

legislature intended that the veterans preference provision of the

Personnel Code would, in these circumstances, require the selection

of Denton instead.

     Veterans preference provisions are intended "to reward

veterans for the sacrifice of military service, to ease the

transition from military to civilian life, to encourage patriotic

service, and to attract loyal and well-disciplined people to civil

service occupations." Personnel Administrator v. Feeney, 442 U.S.

256, 265, 60 L. Ed. 2d 870, 879, 99 S. Ct. 2282, 2289 (1979). Under

the interpretation advanced by the defendants, the provision found

in section 8b.7(f) of the Personnel Code accomplishes those goals

by requiring the hiring of a veteran rather than a nonveteran when

the two candidates are equally qualified, and by granting veterans

a number of other advantages in the manner in which state agencies

governed by the Personnel Code conduct interviews and make hiring

decisions. The guidelines formulated by CMS achieve a careful

balance between the need for the veterans preference legislation

and the purposes of a civil service system, and I would defer to

the defendants' construction of the statute.

     JUSTICES FREEMAN and McMORROW join in this dissent.